[No. A115296. First Dist., Div. Four. Apr. 11, 2008.]

SONIA CERNA et al., Plaintiffs and Appellants, v.
CITY OF OAKLAND et al., Defendants and Respondents.

COUNSEL

Michael B. Moore; and Herbert W. Yanowitz for Plaintiffs and Appellants.

John A. Russo, City Attorney, Randolph W. Hall, Chief Assistant City Attorney, William E. Simmons and Christopher Kee, Deputy City Attorneys, for Defendant and Respondent City of Oakland.

Lafayette & Kumagai, Gary T. Lafayette and Forrest E. Fang for Defendant and Respondent Oakland Unified School District.

OPINION

SEPULVEDA, J.—A motorist killed one child and injured others as they crossed a city street on their way to school. A lawsuit was brought against the city and school district upon allegations that their negligence contributed to the accident. The trial court granted defendants summary judgment upon concluding, among other things, that the city intersection did not create a dangerous condition (Gov. Code, § 830.2) and that the school district was not responsible for the safety of students outside school premises (Ed. Code, § 44808). We affirm the judgment.

## I. FACTS

On the morning of January 15, 2002, an unlicensed motorist struck six pedestrians as they walked in a marked crosswalk at the intersection of International Boulevard and 27th Avenue in Oakland, California. The pedestrians were a family on the way to school, and consisted of Maribel Espinoza and her three children (Juan, Jr., Kathy, and Anylene Espinoza), and Maribel's niece and nephew, Ana and Juan Cerna, Jr. The collision killed Ana and injured the others. The motorist was convicted of vehicular manslaughter. (Pen. Code, § 192, subd. (c).)

This appeal concerns a lawsuit brought by the surviving pedestrians and family members against the City of Oakland (City), for the alleged dangerous condition of its intersection, and the Oakland Unified School District (District), for its alleged negligence in failing to assure safe school access.[1] The trial

---

[1] Plaintiffs are parents and guardians ad litem of the children: Sonia Cerna; Juan Cerna, Sr.; Danny Ravelo as guardian for Juan Cerna, Jr.; Maribel Espinoza; Juan Espinoza, Sr.; and Lynda A. Shain as guardian for Kathy, Anylene, and Juan Espinoza, Jr.

court granted summary judgment to the City and District. We now turn to the facts established on the motion for summary judgment.[2]

Photographs of International Boulevard show it to be a four-lane road, with two lanes in each direction separated in places with a concrete island divider between the opposing lanes of traffic. The intersection of International Boulevard and 27th Avenue has a marked crosswalk: the roadway is painted with white parallel lines at the intersection, the eastbound approach to the intersection has "PED XING" painted on the roadway, and two yellow traffic signs posted on the pavement separately depict a pedestrian and school crossing.

The International Community School (School) opened in the fall of 2001. At the time of the accident on January 15, 2002, pupils and staff at the School were housed in temporary buildings and the only school entrance was on 29th Avenue. The intersection nearest the School, at 29th Avenue and International Boulevard, is controlled with a traffic light. Plaintiff Maribel Espinoza knew from the first day of school in September 2001 that there was no traffic light or crossing guard at the intersection of International Boulevard and 27th Avenue. Maribel concluded that she and her children could cross International Boulevard at 27th Avenue safely, and that the crosswalk at that intersection was equally as safe as the crosswalk along International Boulevard at 29th Avenue, where there is a traffic light. With only one exception, Maribel crossed International Boulevard at 27th Avenue four times each schoolday between September 2001 and the day of the accident in January 2002.

On the day of the accident, Maribel and the children remained within the crosswalk from the time they stepped off the curb until the accident. Maribel and the children crossed safely to the center divider. Maribel, pushing a baby stroller, stood on the center divider and looked down International Boulevard to 23d Avenue, where eastbound traffic coming from downtown Oakland was stopped at a traffic light. Maribel stepped off the center divider with the children just as the traffic began to move in their direction. Maribel saw several cars approaching and thought they would stop and yield to her and the children in the crosswalk. Maribel first saw the green car that struck them

---

[2] The facts recited here were either undisputed by the parties, or conclusively established by the evidence. We have disregarded proffered evidence for which evidentiary objections were sustained, including the declaration of Oakland Police Sergeant Galindo concerning his interrogation of the motorist.

when it was in the curb lane about three car lengths away. Maribel thought the car would stop. Instead of stopping, the car changed lanes to the lane closest to the center divider, where it struck Maribel and the children.

A police officer testified that there was no physical evidence that the motorist, Osvaldo Urzua, slowed or swerved before striking the pedestrians. Photographs of the accident scene show the weather conditions to be sunny and dry. Both the photographs and the testimony of a police officer who responded to the scene attest to the fact that the sun rises in the direct line of sight of eastbound motorists on International Boulevard, and the glare from the rising sun was intensely strong along International Boulevard minutes after the accident.

## II. DISCUSSION

■ The trial court granted the City and District summary judgment on several grounds. Two principal grounds are dispositive on appeal: (1) the City intersection at International Boulevard and 27th Avenue did not create a dangerous condition (Gov. Code, § 830.2); and (2) the District was not responsible for the safety of students outside school premises (Ed. Code, § 44808).[3]

### A. *Standard of review*

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) In considering a request for summary judgment by a defendant, the statute instructs that such a party "has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).) An appellate court reviews de novo a trial court's decision to grant a summary judgment motion. (*Panagotacos v. Bank of America* (1998) 60 Cal.App.4th 851, 855 [70 Cal.Rptr.2d 595].)

### B. *General principles concerning a dangerous condition of public property*

■ A public entity like the City is not liable for an injury arising out of an act or omission of the public entity or its employees *except* as provided by

---

[3] The trial court also found no liability by virtue of design immunity (Gov. Code, § 830.6) and lack of proximate cause.

statute. (Gov. Code, § 815, subd. (a).) The sole statutory basis for imposing liability on public entities as property owners is Government Code section 835. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1131–1132 [119 Cal.Rptr.2d 709, 45 P.3d 1171]; *Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 438–439 [6 Cal.Rptr.3d 316].) Under that statute, a public entity is "liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (Gov. Code, § 835.) The element at issue here is the existence of a dangerous condition.

A "dangerous condition" is defined as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used." (Gov. Code, § 830, subd. (a).) The existence of a dangerous condition is ordinarily a question of fact but "can be decided as a matter of law if reasonable minds can come to only one conclusion." (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 148 [132 Cal.Rptr.2d 341, 65 P.3d 807].) The Legislature has specified that "[a] condition is not . . . dangerous . . . if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property . . . was used with due care in a manner in which it was reasonably foreseeable that it would be used." (Gov. Code, § 830.2.)

"[A] claim alleging a dangerous condition may not rely on generalized allegations [citation] but must specify in what manner the condition constituted a dangerous condition." (*Brenner v. City of El Cajon, supra*, 113 Cal.App.4th at p. 439.) A plaintiff's allegations, and ultimately the evidence, must establish a *physical* deficiency in the property itself. (*Zelig v. County of Los Angeles, supra*, 27 Cal.4th at pp. 1135–1136; *Brenner, supra*, 113 Cal.App.4th at pp. 440–441.) A dangerous condition exists when public property "is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself," or possesses physical

characteristics in its design, location, features or relationship to its surroundings that endanger users. (*Bonanno v. Central Contra Costa Transit Authority, supra*, 30 Cal.4th at pp. 148–149.)

 A public entity may be liable for a dangerous condition of public property even where the immediate cause of a plaintiff's injury is a third party's negligent or illegal act (like Urzua's grossly negligent driving) if some physical characteristic of the property exposes its users to increased danger from third party negligence or criminality. (*Bonanno v. Central Contra Costa Transit Authority, supra*, 30 Cal.4th at p. 152.) But it is insufficient to show only harmful third party conduct, like the conduct of a motorist. " '[T]hird party conduct by itself, unrelated to the condition of the property, does not constitute a "dangerous condition" for which a public entity may be held liable.' " (*Zelig v. County of Los Angeles, supra*, at p. 1134.) There must be a defect in the physical condition of the property and that defect must have some causal relationship to the third party conduct that injures the plaintiff. (*Id.* at pp. 1135–1140.) "[P]ublic liability lies under [Government Code] section 835 only when a feature of the public property has 'increased or intensified' the danger to users from third party conduct." (*Bonanno, supra*, at p. 155.)

## C. *The City intersection was not in a dangerous condition*[4]

Plaintiffs identified seven features that allegedly made the City intersection dangerous: (1) the crosswalk was painted white, not yellow; (2) there was no sign painted in the approaching roadway with the words "SLOW—SCHOOL XING"; (3) there was no traffic signal; (4) there were no crossing guards; (5) signs warning of the presence of student pedestrians were either missing or in an incorrect position; (6) the crosswalk was not painted with diagonal or longitudinal lines; and (7) there were no blinking lights in the pavement along the parallel painted lines of the crosswalk. The trial court, after viewing the evidence most favorably to plaintiffs, concluded that the risk created by the identified features of the intersection was of such a minor, trivial, or insignificant nature that no reasonable person would conclude that the condition created a substantial risk of injury. (Gov. Code, § 830.2.) The trial court was correct.

Most of plaintiffs' allegations of a dangerous crosswalk rest on the claim that the crosswalk was mismarked as a standard pedestrian crosswalk (white

---

[4] Plaintiffs' claim for a dangerous condition of public property is asserted primarily against the City that controlled the intersection, although plaintiffs also assert that the District is liable as an owner of school property adjacent to a dangerous intersection. We need not consider the District's potential liability as an alleged adjacent property owner because we conclude that the intersection was not dangerous.

paint) instead of a school pedestrian crosswalk (yellow paint with additional signage). Plaintiffs rely upon Vehicle Code section 21368, which provides: "Whenever a marked pedestrian crosswalk has been established in a roadway contiguous to a school building or the grounds thereof, it shall be painted or marked in yellow as shall be all the marked pedestrian crosswalks at an intersection in case any one of the crosswalks is required to be marked in yellow. Other established marked pedestrian crosswalks may be painted or marked in yellow if either (a) the nearest point of the crosswalk is not more than 600 feet from a school building or the grounds thereof, or (b) the nearest point of the crosswalk is not more than 2,800 feet from a school building or the grounds thereof, there are no intervening crosswalks other than those contiguous to the school grounds, and it appears that the facts and circumstances require special painting or marking of the crosswalks for the protection and safety of persons attending the school. There shall be painted or marked in yellow on each side of the street in the lane or lanes leading to all yellow marked crosswalks the following words, 'SLOW—SCHOOL XING,' except that such words shall not be painted or marked in any lane leading to a crosswalk at an intersection controlled by stop signs, traffic signals, or yield right-of-way signs. A crosswalk shall not be painted or marked yellow at any location other than as required or permitted in this section."

Plaintiffs claim the subject crosswalk is contiguous with school grounds and thus Vehicle Code section 21368 required that the crosswalk be painted yellow (instead of white) and have "SLOW—SCHOOL XING" painted in the roadway (instead of "PED XING"). Plaintiffs' expert traffic engineer also opined that, as a school crossing with heavy motor vehicle traffic, the crosswalk should have had additional signs warning of the presence of student pedestrians, a roadway painted with diagonal or longitudinal lines within the intersection, and blinking lights set in the pavement along the parallel painted lines of the crosswalk.

Plaintiffs rely on Vehicle Code section 21368 in two respects. First, plaintiffs claim the City was under a mandatory duty to comply with the Vehicle Code as an enactment designed to protect against the injuries plaintiffs suffered. (Gov. Code, § 815.6.) Second, plaintiffs claim the intersection's nonconformity with Vehicle Code section 21368 is evidence that the intersection was in a dangerous condition. (Gov. Code, § 835.) The first claim is not cognizable on appeal. To assert liability under Government Code section 815.6 for breach of a mandatory duty, a plaintiff must specifically allege liability in his or her complaint and identify the applicable statute or regulation that imposes the alleged mandatory duty. (*Washington v. County of Contra Costa* (1995) 38 Cal.App.4th 890, 896 [45 Cal.Rptr.2d 646].) While plaintiffs mention Vehicle Code section 21368 in their operative third amended complaint, they do not specifically allege violation of a mandatory duty under Government Code section 815.6. The pleadings limit the issues on

a motion for summary judgment (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381 [282 Cal.Rptr. 508]) and theories that were not fully developed in the trial court cannot create a triable issue on appeal (*Uriarte v. United States Pipe & Foundry Co.* (1996) 51 Cal.App.4th 780, 790 [59 Cal.Rptr.2d 332]).

In any event, plaintiffs' reliance on Vehicle Code section 21368—whether to create a mandatory duty or to demonstrate a dangerous condition—is misplaced because the statute is inapplicable. The intersection was not contiguous to school grounds and thus Vehicle Code 21368 did not require demarcation in yellow paint and additional signage warning of a school crossing. The location of the crosswalk relative to the School grounds is not in dispute, and thus the applicability of Vehicle Code section 21368 is a question of law. (*Lewis v. City of Los Angeles* (1982) 137 Cal.App.3d 518, 521 [187 Cal.Rptr. 273] (*Lewis*).) The evidence establishes that the only entrance to the School was on 29th Avenue, three blocks from the 27th Avenue crosswalk where plaintiffs were injured. The subject crosswalk was about 50 feet from the periphery of undeveloped School property. At the time of the accident, the School was still under construction and the nearest School property to the crosswalk was an empty lot surrounded by a tall chain link fence. The lot has subsequently been developed into a gated parking lot.

Plainly, the School grounds were not contiguous with the crosswalk roadway if the primary meaning of contiguous—physically touching—is applied. (Merriam-Webster's Online Dict. <www.merriam-webster.com/dictionary/contiguous> [as of Apr. 11, 2008].) Plaintiffs argue for a looser meaning of contiguous to mean simply near, rather than physically touching. There is some support for their position. (*Lewis, supra*, 137 Cal.App.3d at pp. 520–522; 26 Ops.Cal.Atty.Gen. 69 (1955).)

In *Lewis*, the court held that the word "contiguous," as used in Vehicle Code section 21368, does not require an actual physical touching between the crosswalk roadway and school grounds. (*Lewis, supra*, 137 Cal.App.3d at pp. 520–522.) There need only be a " 'natural relationship, a physical relationship between the roadway, the crosswalk and the school' " because the purpose of the statute is to protect schoolchildren. (*Ibid.*) We question whether this is a proper interpretation of Vehicle Code section 21368. While the statute was undoubtedly meant to protect schoolchildren, and perhaps deserves a broad interpretation to effectuate that intent, the statute also clearly establishes three categories of crosswalks: crosswalks contiguous with school grounds that "shall" be painted yellow, crosswalks that are within a specified distance of school grounds that "may" be painted yellow, and all other crosswalks which "shall not" be painted yellow. (Veh. Code, § 21368.) The statutory distinction between crosswalks contiguous to school grounds (that

shall be painted yellow) and those within 2,800 feet of school grounds (that may be painted yellow) suggests that only those crosswalks actually touching school grounds must be painted yellow. For roadways near but not touching school grounds, yellow crosswalks are discretionary. If Vehicle Code section 21368 is interpreted to mandate yellow crosswalks on roadways that are near schools and have a "natural relationship" to school grounds, how are we to understand the provision allowing discretion for the establishment of crosswalks on roadways within 2,800 feet of school grounds?

Even if we accept the *Lewis* court's broad interpretation of "contiguous" in Vehicle Code section 21368, the subject crosswalk was not contiguous to school grounds. The *Lewis* court found no "natural relationship" between a crosswalk and school grounds, and thus no contiguity, where the crosswalk was 210 feet from school grounds and separated by a city block. (*Lewis, supra,* 137 Cal.App.3d at pp. 520–522.) There is likewise no "natural relationship" between the crosswalk and school grounds at issue here. The crosswalk is 50 feet from the nearest School property, and that property was an undeveloped lot providing no student access. The only School entrance was three blocks from the crosswalk. The crosswalk was not "contiguous" to school grounds, and thus need not have been painted yellow and marked with additional school crossing signs.

Moreover, drivers of vehicles are required to yield the right-of-way to pedestrians in any marked crosswalk, "whether they are painted white or yellow." (*Moritz v. City of Santa Clara* (1970) 8 Cal.App.3d 573, 576 [87 Cal.Rptr. 675].) In *Moritz,* the court affirmed summary judgment for a city defendant where the plaintiffs, pedestrians walking in a yellow crosswalk at night, were struck by a motorist. (*Id.* at pp. 575–578.) The plaintiffs argued that the yellow crosswalk constituted a dangerous condition of public property because motorists would think that the crosswalk was only operational during school hours. (*Id.* at pp. 575–576.) The court rejected the argument, noting that motorists must yield to pedestrians in any crosswalk and that the plaintiffs were endangered by the motorist's violation of the law, not the color of the crosswalk. (*Id.* at p. 576.) The same applies here. Any risk to pedestrians created by the color of the crosswalk markings was "of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury." (Gov. Code, § 830.2.)

■ Plaintiffs' reliance on other features of the intersection to prove that it was in a dangerous condition is similarly misplaced. The lack of a traffic signal at the intersection does not constitute proof of a dangerous condition. "A condition is not . . . dangerous . . . merely because of the failure to provide regulatory traffic control signals . . . ." (Gov. Code, § 830.4; see

*Brenner v. City of El Cajon, supra,* 113 Cal.App.4th at p. 439.) Nor does the lack of crossing guards prove a dangerous condition. The presence or absence of crossing guards is not a physical characteristic of the intersection and thus not actionable as a dangerous condition. A lack of human supervision and protection is not a deficiency in the physical characteristics of public property. (See *Zelig v. County of Los Angeles, supra,* 27 Cal.4th at pp. 1135–1141 [lack of police screening at courthouse not a dangerous condition of property]; *Bartell v. Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492, 497–498 [147 Cal.Rptr. 898] [lack of supervision at school playground not a dangerous condition of property].) As the City argues on appeal: "an intersection is not dangerous because there are no crossing guards—it needs crossing guards because it is dangerous." Plaintiffs may not presuppose the dangerousness of the intersection and then fault the City for not posting crossing guards. Moreover, crossing guards provide essentially a police function in providing traffic control and enforcement of traffic laws. (*Wright v. Arcade School Dist.* (1964) 230 Cal.App.2d 272, 277–278 [40 Cal.Rptr. 812]; 60 Ops.Cal.Atty.Gen. 177 (1977).) Public entities are immune from liability for asserted failures to provide police and security services. (Gov. Code, § 845; *Zelig, supra,* at pp. 1141–1147.)

The trial court rightly found, as a matter of law, that the City intersection at International Boulevard and 27th Avenue did not create a dangerous condition. (Gov. Code, § 830.2.) While the existence of a dangerous condition is ordinarily a question of fact, the issue "can be decided as a matter of law if reasonable minds can come to only one conclusion." (*Bonanno v. Central Contra Costa Transit Authority, supra,* 30 Cal.4th at p. 148.) Applying that principle, a number of courts have found in similar contexts that a dangerous condition did not exist. (E.g., *City of San Diego v. Superior Court* (2006) 137 Cal.App.4th 21 [40 Cal.Rptr.3d 26] [racing motorist struck another motorist]; *Brenner v. City of El Cajon, supra,* 113 Cal.App.4th 434 [motorist struck pedestrian]; *Antenor v. City of Los Angeles* (1985) 174 Cal.App.3d 477 [220 Cal.Rptr. 181] [motorist struck pedestrians].) Plaintiffs' argument that the allegedly dangerous features of the City intersection must be considered in combination does not alter our conclusion. Whether considered independently or cumulatively, the identified features of the intersection did not create a dangerous condition.

D. *General principles of school district responsibility for students outside school*

"School districts and their employees have never been considered insurers of the physical safety of their students, but rather are placed under a general duty to supervise the conduct of children on school grounds during school sessions, school activities, recesses, and lunch periods." (*Bartell v.*

*Palos Verdes Peninsula Sch. Dist., supra*, 83 Cal.App.3d at p. 498; see *Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932–933 [80 Cal.Rptr.2d 811, 968 P.2d 522] [duty to supervise students].) Early California cases consistently held that a school district has no duty to safeguard students traveling, on their own, to and from school. (E.g., *Gilbert v. Sacramento Unified School Dist.* (1968) 258 Cal.App.2d 505, 506, 510 [65 Cal.Rptr. 913] [student killed by train while walking home from school]; *Wright v. Arcade School Dist., supra*, 230 Cal.App.2d at pp. 275, 277–280 [student injured by motorist while walking to school]; *Kerwin v. County of San Mateo* (1959) 176 Cal.App.2d 304, 306–309 [1 Cal.Rptr. 437] [student injured in fall from bicycle on way home from school]; *Girard v. Monrovia City School Dist.* (1953) 121 Cal.App.2d 737, 739, 741–743 [264 P.2d 115] [student killed by motorist while walking home from school].)

In 1976, the Legislature enacted a law endorsing the common law principle that a school district is not legally responsible for accidents to students on their way to and from school. (Ed. Code, § 44808 [hereafter, section 44808]; *Hoyem v. Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 516–517 [150 Cal.Rptr. 1, 585 P.2d 851] (*Hoyem*).) Section 44808 provides: "Notwithstanding any other provision of this code, no school district, city or county board of education, county superintendent of schools, or any officer or employee of such district or board shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district, board, or person has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances. [¶] In the event of such a specific undertaking, the district, board, or person shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board."

A close reading of section 44808 discloses a linguistic ambiguity, and that ambiguity has emboldened plaintiffs to argue that section 44808 does not endorse the early common law principle that a school district has no duty to safeguard students outside school premises and supervision but instead subjects school districts to general negligence liability *whenever* the school district fails to exercise reasonable care. The ambiguity arises in the long first sentence of the statutory provision, where the Legislature provides that no school district is liable for the safety of any pupil not on school property, "unless such district . . . has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such . . . liability *or has failed to exercise reasonable care under the*

*circumstances*." (§ 44808, italics added.) Does the "reasonable care" phrase establish the standard of care applicable to specific undertakings and assumptions of duty (like transportation), or does the phrase itself establish a duty of care and thus make a district liable for any negligence, anywhere (as plaintiffs argue)? Despite some early confusion on the point, the weight of authority holds that the "reasonable care" phrase "does not create a common law form of general negligence; it refers to the failure to exercise reasonable care during one of the mentioned undertakings." (*Bassett v. Lakeside Inn, Inc.* (2006) 140 Cal.App.4th 863, 871 [44 Cal.Rptr.3d 827].)

E. *A statement of law made when issuing an alternative writ without a written opinion is not law of the case*

■ The District maintains that no further discussion of section 44808 is necessary on appeal. The District argues that a prior proceeding in this case determined that section 44808 does not create general negligence liability, and the prior determination is law of the case binding on appeal. "The law of the case doctrine states that when, in deciding an appeal, an appellate court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal . . . .' " (*Kowis v. Howard* (1992) 3 Cal.4th 888, 892–893 [12 Cal.Rptr.2d 728, 838 P.2d 250].) The doctrine has limited application to pretrial writ proceedings (*id.* at pp. 893–895) and has no application here.

In earlier proceedings, the District petitioned for a writ of mandate to this court, seeking an order directing the trial court to grant its motion to strike allegations of negligence from plaintiffs' first amended complaint. The District asserted immunity for off-campus student injuries under section 44808. We issued an alternative writ directing the trial court to reconsider its denial of the District's motion in light of authorities we cited, or to show cause why it should not be compelled to do so. In issuing the writ, we stated: "There are limited exceptions to the immunity provided by section 44808. Those exceptions require a specific undertaking by the school district and direct supervision by a district employee."

The trial court reconsidered its ruling and granted the motion to strike, with an opportunity to amend the complaint. Plaintiffs' third amended complaint (which alleges a specific undertaking) survived demurrer but was defeated by summary judgment, with which we are now concerned. The District argues that this court's statement of law in issuing the alternative writ is law of the case. The District is mistaken. "[A]bsent a written opinion following issuance of the alternative writ, this court's reasoning in issuing the alternative writ is not the law of the case . . ." binding on appeal. (*Ross v. San Francisco Bay*

*Area Rapid Transit Dist.* (2007) 146 Cal.App.4th 1507, 1513, fn. 6 [53 Cal.Rptr.3d 715].) We must consider the legal issues anew. We do, however, reach the same conclusion.

### F. *Education Code section 44808 does not create general negligence liability*

Plaintiffs' argument that section 44808 imposes a form of general negligence liability upon school districts is founded upon the first judicial interpretation of the statute in 1978 by a sharply divided California Supreme Court. (*Hoyem, supra,* 22 Cal.3d at pp. 516–520; *id.* at pp. 523–528 (conc. & dis. opn. of Clark, J. & dis. opn. of Richardson, J., with Mosk, J., concurring).) In *Hoyem,* a student who departed school during school hours without permission was injured when struck by a motorcycle. (*Id.* at p. 512.) The student and his mother sued the school district, alleging that if the school had provided adequate supervision then the student would never have left school and been injured. (*Id.* at p. 520, fn. 5.) The court had to determine whether "a school district may ever be held liable when, *as a result of school authorities' negligent supervision of students on school premises,* a pupil leaves the school grounds during school hours and is subsequently injured by a motorist." (*Id.* at pp. 511–512, italics added.) The court held the district may be liable "if plaintiffs can prove that the pupil's injury was proximately caused by the school district's negligent supervision." (*Id.* at p. 512.) The high court emphasized that it was concerned with alleged negligence while the student was under direct school supervision at school and not negligence before or after school hours: "we merely reaffirm that school districts must exercise reasonable care in supervising their pupils *while the pupils are on school premises.*" (*Id.* at pp. 515–516, italics added.) The school district had argued that it was immune from liability for any injury incurred off school premises. (*Id.* at p. 514.) The court rejected the argument, and remarked that the defendant district's "emphasis on the *situs of the injury* is totally misplaced. Contrary to defendant's assertion, no California decision suggests that when a school district fails to properly supervise a student on school premises, the district can automatically escape liability simply because the student's ultimate injury occurs off school property." (*Id.* at p. 515, original italics.)

In reaching its conclusion, the *Hoyem* court addressed section 44808. (*Hoyem, supra,* 22 Cal.3d at pp. 516–518.) The court found the statute inapplicable, in that the plaintiffs alleged school responsibility for a pupil while the pupil was on school premises. (*Id.* at pp. 515, 517.) In contrast, section 44808, is "principally concerned with limiting a school district's liability for injuries to pupils either before or after school hours while children were either going to school or coming home after school." (22 Cal.3d at p. 517.) The court observed that section 44808 in no way "limits a school

district's responsibility to supervise students during school hours on school premises . . . ." (22 Cal.3d at p. 518.)

The court recognized that the intent of section 44808 is to continue the common law rule restricting a school district's liability for accidents to students going to or from school after school hours. (*Hoyem, supra,* 22 Cal.3d at p. 518.) But the court also made some additional remarks about section 44808 that have engendered confusion over the last 30 years. In rejecting the district's claim that section 44808 provides "blanket immunity for off-campus injuries unless the school undertakes to furnish off-campus supervision or sponsors an off-campus activity," the court stated: "Although the initial portion of the statute provides that 'no school district shall be responsible . . . for the conduct or safety of any pupil . . . at any time when such pupil is not on school property,' the section goes on explicitly to withdraw this grant of immunity whenever the school district, inter alia, '*has failed to exercise reasonable care under the circumstances.*' Plaintiffs' complaint alleges that the school district failed to exercise reasonable care. Assuming, as we must on appeal from a sustained demurrer, the truth of the allegations of the complaint [citations], section 44808, by its own terms, does not bar liability in the present case." (22 Cal.3d at p. 517, original italics, fn. omitted.) The court further remarked that the intent of the Legislature in adding the "reasonable care" exception "is clear: when a school district fails to exercise reasonable care the immunity of this section evaporates." (*Id.* at p. 517, fn. 2.)

The *Hoyem* court's statements about section 44808 are problematic. On the one hand, we are told the Legislature intended section 44808 to free school districts from liability for accidents to students en route to school, consistent with the then existing common law. (*Hoyem, supra,* 22 Cal.3d at p. 518.) On the other hand, we are told the Legislature intended to hold school districts liable for every failure to exercise reasonable care. (*Id.* at p. 517.) Which of these apparently conflicting interpretations of section 44808 are we to follow?

Litigants and jurists have grappled with this problem for 30 years. The consensus of decisions from the Court of Appeal is that "section 44808 limits the liability of schools for after-hours, off-campus activity, absent a specific undertaking." (*Guerrero v. South Bay Union School Dist.* (2003) 114 Cal.App.4th 264, 273 [7 Cal.Rptr.3d 509].) "The portion of section 44808 that refers to failing to exercise reasonable care does not create a common law form of general negligence; it refers to the failure to exercise reasonable care during one of the mentioned undertakings." (*Bassett v. Lakeside Inn, Inc., supra,* 140 Cal.App.4th at p. 871.) With a single exception (*Joyce v. Simi Valley Unified School Dist.* (2003) 110 Cal.App.4th 292, 301 [1 Cal.Rptr.3d 712]), every court that has considered the matter since *Hoyem, supra,* 22

Cal.3d 508, has interpreted section 44808 to provide that school districts are not responsible for the safety of students outside school property absent a specific undertaking by the school district and direct supervision by a district employee. (*Bassett, supra,* 140 Cal.App.4th 863, 870–872; *Mosley v. San Bernardino City Unified School Dist.* (2005) 134 Cal.App.4th 1260, 1264–1265 [36 Cal.Rptr.3d 724]; *Guerrero, supra,* 114 Cal.App.4th 264, 269–272; *Ramirez v. Long Beach Unified School Dist.* (2002) 105 Cal.App.4th 182, 188–192 [129 Cal.Rptr.2d 128]; *Wolfe v. Dublin Unified School Dist.* (1997) 56 Cal.App.4th 126, 129 [65 Cal.Rptr.2d 280]; *Torsiello v. Oakland Unified School Dist.* (1987) 197 Cal.App.3d 41, 47–49 [242 Cal.Rptr. 752] (*Torsiello*).)

Plaintiffs' argument that section 44808 establishes school district liability whenever a school district fails to exercise reasonable care is an argument this court considered, and rejected, over 20 years ago. (*Torsiello, supra,* 197 Cal.App.3d at pp. 47–49.) In *Torsiello,* we considered section 44808's provision that no school district is liable for the safety of any pupil not on school property, "unless such district . . . has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such . . . liability *or has failed to exercise reasonable care under the circumstances.*" (§ 44808, italics added.) We held that the "reasonable care" phrase is a standard of care applicable to the preceding three phrases, and does not create an independent basis for liability. (*Torsiello, supra,* at pp. 47–48.)

Our view has been widely endorsed. Overwhelmingly, the courts have held that section 44808 " 'grants . . . immunity unless a student was (or should have been) directly supervised during a specified undertaking. The [statutory] language "failed to exercise reasonable care under the circumstances," while set off by an "or" as if meant to be a self-sufficient basis for liability, has correctly been construed as requiring such failure *during* one of the mentioned "undertakings." To construe it as an independent basis for liability would be to say, absurdly: A district is never liable in negligence unless it acts negligently. Also, the breach must be of a duty, a duty created through one of the undertakings. [Citation.] "The 'reasonable care' phrase enunciates a standard of care and as such cannot exist in a vacuum; in the absence of a duty to which it applies, the phrase is meaningless." ' " (*Ramirez v. Long Beach Unified School Dist., supra,* 105 Cal.App.4th at pp. 188–189, quoting *Wolfe v. Dublin Unified School Dist., supra,* 56 Cal.App.4th at p. 129, citing *Torsiello, supra,* 197 Cal.App.3d at pp. 47–48.) We believe the proper interpretation of section 44808 to be as stated in *Torsiello* and subsequent cases: school districts are not responsible for the safety of students outside school property absent a specific undertaking by the school district and direct supervision by a district employee. (*Bassett v. Lakeside Inn, Inc., supra,* 140

Cal.App.4th at pp. 870–872; *Mosley v. San Bernardino City Unified School Dist., supra,* 134 Cal.App.4th at pp. 1264–1265; *Guerrero v. South Bay Union School Dist., supra,* 114 Cal.App.4th at pp. 269–272; *Ramirez, supra,* 105 Cal.App.4th at pp. 188–192; *Wolfe, supra,* 56 Cal.App.4th at p. 129; *Torsiello, supra,* at pp. 47–49; see *Hoff v. Vacaville Unified School Dist, supra,* 19 Cal.4th at p. 940 [finding no liability under § 44808 where specific responsibility not assumed; made no mention of general negligence basis for liability].)

G. *The District did not specifically assume responsibility for plaintiffs' safety*

As an alternative to their failed claim of general negligence, plaintiffs argue that the District "specifically assumed" responsibility for plaintiffs' safety. It will be recalled that section 44808 provides: "[N]o school district . . . shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district . . . has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, *has otherwise specifically assumed such responsibility or liability* or has failed to exercise reasonable care under the circumstances." (Italics added.)

Plaintiffs argue that the District specifically assumed responsibility for plaintiffs' safety by (1) preparing a California Environmental Quality Act (CEQA) environmental impact report (EIR) in which it analyzed traffic safety impacts (Pub. Resources Code, § 21000 et seq.); (2) adopting a resolution finding that site selection standards for the new School were met, including a standard for pedestrian safety; and (3) telling parents it would take steps to make it safe for walking to and from the new School. None of these constitutes a specific assumption of responsibility under section 44808.

█ The CEQA EIR does not raise a triable issue of District liability for students injured in a crosswalk on the way to school. "CEQA is a comprehensive scheme designed to provide long-term protection to the environment." (*Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 112 [65 Cal.Rptr.2d 580, 939 P.2d 1280].) When a public agency undertakes a project that may have a significant and adverse physical effect on the environment, an EIR is prepared. (*Id.* at pp. 112–113.) "An EIR provides the public and responsible government agencies with detailed information on the potential environmental consequences of an agency's proposed decision." (*Id.* at p. 113.)

It is questionable whether an EIR, with its specialized purpose, could ever constitute an assumption of district responsibility for student safety under

section 44808. Allowing for the possibility, it is plain that no responsibility was assumed here. The EIR noted that the proposed School "would generate increased pedestrian activity across International Boulevard" and concluded that "[t]he existence of pedestrian crossing signals and crosswalk striping at the intersection of International Boulevard/29th Avenue (crossing point closest to the site) would provide safe pedestrian crossing opportunities." The intersection where plaintiffs were injured, International Boulevard and 27th Avenue, was not analyzed in the EIR. The consultant who prepared the EIR reasoned that student pedestrians would cross International Boulevard where there was a traffic signal (at 29th Avenue), and eliminated consideration of 27th Avenue from his traffic studies. Nothing in the EIR suggests that the District assumed any responsibility for pedestrian safety at the subject intersection.

The District resolution plaintiffs rely upon is one that approved the purchase of property used to build the School. Plaintiffs contend that the District, by approving the School site, assumed responsibility for student safety. The District found the School project met statutory and regulatory site selection standards. (Ed. Code, § 17211 et seq.; Cal. Code Regs., tit. 5, § 14010.) In addressing those standards, the District noted: "The site is on major arterial streets with a heavy traffic pattern as determined by site-related traffic studies including those that require student crossings but [a] mitigation plan has been developed that complies with the 'School Area Pedestrian Safety' manual, California Department of Transportation, 1987 edition." (See Cal. Code Regs., tit. 5, § 14010, subd. (*l*).) Plaintiffs argue that the District specifically assumed responsibility for the safety of students off premises by averring its compliance with the identified safety manual when approving the School site.

■ We are not persuaded. The courts have previously recognized that the School Area Pedestrian Safety manual does not create mandatory duties but simply provides advisory guidelines that "recommend standards and procedures aimed at bringing about desirable safety conditions." (*Searcy v. Hemet Unified School Dist.* (1986) 177 Cal.App.3d 792, 799–801 [223 Cal.Rptr. 206].) In *Searcy*, a student was injured by a motorist on her way home from school and sued the school district contending, among other things, that the School Area Pedestrian Safety manual imposed a mandatory duty to develop a suggested route to school. (*Id.* at pp. 796, 800–801 & fn. 4; Gov. Code, § 815.6.) The court rejected the contention. The court observed: "The recommendatory, nonmandatory quality of the traffic control guidelines in the safety

manual is self evident. [Citation.] Although these advisory materials can be utilized by governmental agencies to improve student safety, the authority they provide is discretionary; they do not impose mandatory duties upon [the] School District . . . ." (*Searcy, supra,* at p. 801, italics omitted.) We see no basis for holding that a school district specifically assumes liability for student conduct and safety by adopting advisory safety guidelines.

Finally, we reach plaintiffs' allegation that the District assumed responsibility for student safety by "inducing parents to transfer their children to the School by representations that adequate safety measures would be installed and enforced." According to a declaration filed by plaintiff Sonia Cerna, District "representatives" told "parents that various things would be done to make it safe for students to walk to and from School. These included the installation of traffic lights or stop signs, crossing guards, and the presence of police officers. Before the School opened, somebody from the School District stated that there would be a crossing guard at the intersection of International Boulevard and 27th Avenue."

■ These alleged representations by unidentified District representatives are too general and vague to constitute a specific assumption of liability under section 44808. The alleged statement about crossing guards at the subject intersection, while more definite than the others, has other problems as a basis for liability. First, a school district does not affirmatively assume responsibility for student safety by the bare promise of a crossing guard in the indefinite future. Second, crossing guards are a municipal obligation outside the responsibility of school districts. (*Wright v. Arcade School Dist., supra,* 230 Cal.App.2d at pp. 277–278.) Third, crossing guards provide essentially a police function in providing traffic control and enforcement of traffic laws. (*Ibid.*; 60 Ops.Cal.Atty.Gen., *supra,* at p. 177.) As we noted earlier in discussing claims against the City, public entities are immune from liability for asserted failures to provide police and security services. (Gov. Code, § 845; *Zelig v. County of Los Angeles, supra,* 27 Cal.4th at pp. 1141–1147.) Fourth, and finally, the lack of a crossing guard was not a proximate cause of injuries suffered. Plaintiffs were not misled about the nature of the intersection, and the safety devices it had and lacked. Months before the accident, plaintiffs knew there was never a crossing guard at the intersection of International Boulevard and 27th Avenue. There is also no indication in the record that a crossing guard could have averted the accident. The motorist ran over six pedestrians in the crosswalk without hitting his car brakes. There is no reason to believe that the presence of another person in the intersection, a crossing guard, would have made any difference.

## III. DISPOSITION

The judgment is affirmed.

Reardon, Acting P. J., and Rivera, J., concurred.

A petition for a rehearing was denied May 5, 2008, and appellants' petition for review by the Supreme Court was denied July 16, 2008, S163708.