Filed 1/21/15  Campos v. Escalante CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LENETTE STEPHANY CAMPOS, | B249190 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC482844) |
| v. | |
| OSVALDO ESCALANTE et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge.  Affirmed.

Nelson & Natale and Silvio Natale for Plaintiff and Appellant.

Young, Minney & Corr, Sarah Kalas Bancroft and Andrew G. Minney for Defendants and Respondents Dr. Olga Mohan High School and Alliance College Ready Public Schools.

## INTRODUCTION

Plaintiff and appellant Lenette Stephany Campos was struck by a vehicle while in an unmarked crosswalk located around the corner from her school, defendant and respondent Dr. Olga Mohan High School (OMHS), a public charter school run by defendant and respondent Alliance College Ready Public Schools (Alliance).[1]  She sued OMHS and Alliance for negligence.  Based on its finding that Campos failed to allege a duty of care owed to her by OMHS and Alliance, the trial court sustained their joint demurrer without leave to amend.  Campos appeals.  We find that Campos failed to allege a duty owed to her by the School, and we therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Factual background.[2]

OMHS is a public charter school located at 644 West 17th Street in Los Angeles. Alliance, an independent nonprofit charter school management organization, manages OMHS.  OMHS is at the corner of West 17th and St. Georgia Streets in Los Angeles. The school's exit is on West 17th Street, between St. Georgia and Figueroa.  From the school, there are only two paths of travel for pedestrians, to proceed either south on St. Georgia Street to West 18th Street or east on West 17th Street to Figueroa Street. There are no marked crosswalks at either West 17th and Figueroa or at West 18th and Figueroa, which is a T-intersection.  Approximately 25 percent of OMHS's 300 students walk east on West 17th to Figueroa, and then south on Figueroa to take public transportation.

---

[1]      We refer to OMHS and Alliance collectively as the School.

[2]      Because this is an appeal from a judgment following an order sustaining a demurrer without leave to amend, we recite the facts as alleged in the second amended complaint and any exhibits attached thereto.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

On April 19, 2010, 16-year-old Campos was a student at OMHS. After school that day, she walked to her public bus stop at West 18th Street. She exited OMHS at its only exit on West 17th Street. She turned right and walked eastbound on West 17th Street to Figueroa Street. She turned right onto Figueroa and walked southbound on the west sidewalk of Figueroa. While in the unmarked crosswalk at Figueroa and West 18th Street, a commercial truck driven by Osvaldo Escalante struck Campos, injuring her. The crosswalk "is not more than 600 feet from a school building or the grounds" and "the nearest point of the crosswalk is not more than 2,800 feet from a school building or the grounds . . . ."

## II. Procedural background.

Campos filed a complaint on April 19, 2012.[3] She filed her second amended complaint (SAC) on January 28, 2013.[4] It alleged a first cause of action for motor vehicle negligence against Escalante (the driver of the commercial truck that struck Campos) and Marco Miranda and Marco Miranda Trucking (the truck's owners).[5] Against OMHS and Alliance, the SAC alleged a second cause of action for negligence. The SAC alleged that the California Traffic Manual and Vehicle Code sections 21368 (concerning marking of crosswalks) and 21373 (regarding school board requests for traffic controls) imposed a duty of care on OMHS and Alliance.

---

[3] OMHS and Alliance also state that Campos filed a complaint in February 2011 against Escalante and the owners of the truck that struck Campos, but Campos dismissed that complaint without prejudice and then filed the complaint that initiated this action. Pleadings from any action initiated in February 2011 are not a part of the record on appeal.

[4] According to a case summary from the Los Angeles Superior Court website, a first amended complaint was filed in November 2012. OMHS and Alliance demurred to the first amended complaint, and it was sustained. Neither these pleadings nor transcripts from any hearing on the demurrers are a part of the record on appeal.

[5] Escalante and the Miranda defendants answered the SAC and are not parties to this appeal.

3

OMHS and Alliance demurred to the negligence cause of action on the grounds that the traffic manual was "[o]utdated, [i]neffective, and [o]therwise [n]onbinding" and that the Vehicle Code does not create a duty for schools to mark, monitor, warn or make safe an intersection. Campos opposed the demurrer.

On April 23, 2013, the trial court sustained without leave to amend the demurrer to the second cause of action for negligence on the ground that Campos failed to allege the element of duty. Notice of entry of the order sustaining the demurrer was filed on May 2, 2013. This appeal followed.

## DISCUSSION

### I. Standard of review.

To determine whether a plaintiff has properly stated a claim for relief, "our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) Our review is de novo. (*Ibid*.) To this end, we liberally construe the complaint with a view to achieving substantial justice between the parties. (Code Civ. Proc., § 452.)

### II. Immunity.

Before turning to the substantive issue, we briefly address Campos's contention that OMHS and Alliance "are not public entities subject to the Government Code Tort Requirements nor do they benefit from any Governmental Immunities requiring CAMPOS to allege a 'dangerous condition' of public property, within the meaning of

4

Government Code sections 830 and 835." Campos's argument appears to be that OMHS and Alliance have all the obligations and duties of a public entity school but are not entitled to any immunities.[6] It is unnecessary for us to resolve this issue. As we discuss below, Campos fails to show that OMHS and Alliance owed her a duty of care—regardless of their public or nonpublic status and any attendant immunities.

## III.     The SAC fails to allege facts giving rise to a duty of care.

The trial court sustained the demurrer without leave to amend because Campos failed to allege facts showing that OMHS and Alliance owed her a duty of care. Campos, however, argues that OMHS and Alliance have a general duty under "any legal theory" to provide safe access to and from school. This duty, she asserts, is based on case law, the Vehicle Code, and traffic manuals. We find that the authorities she cites do not establish a duty of care owed to her by OMHS and Alliance.

Liability for negligence is based on a defendant's breach of its duty of care to the plaintiff and damages caused by that breach. (*Paz v. State of California* (2000) 22 Cal.4th 550, 559; *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1188, disapproved on another point in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 & fn. 9.) The existence of duty is the threshold element of a negligence cause of action, and it is a question of law for the court. (*Paz,* at p. 559; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674, disapproved on other grounds by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527.)

"A landowner owes a duty to exercise reasonable care to maintain his or her property in such a manner as to avoid exposing others to an unreasonable risk of injury." (*Barnes v. Black* (1999) 71 Cal.App.4th 1473, 1478.) The scope of a landowner's duty of care is generally determined by these factors: the foreseeability of harm to the injured

---

[6]     School districts, for example, are not legally responsible for the conduct or safety of students to or from school, unless the school district has undertaken to provide transportation for the pupil to and from the school premises, or otherwise assumed responsibility or liability. (Ed. Code, § 44808; see also *Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1353 (*Cerna*).)

party, the degree of certainty that he or she suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. (*Ibid.*; see also *Rowland v. Christian* (1968) 69 Cal.2d 108, 113; *Ann M. v. Pacific Plaza Shopping Center, supra,* 6 Cal.4th at p. 675, fn. 5.)

Here, Campos alleges that the School's duty to provide for her safety when she left school grounds arises under (A) *Joyce v. Simi Valley Unified School Dist.* (2003) 110 Cal.App.4th 292 (*Joyce*), (B) Vehicle Code section 21368, and (C) traffic manuals.

A.      *Joyce and dangerous conditions of property.*

Campos first argues that the School owed her a duty under *Joyce, supra,* 110 Cal.App.4th 292.[7]  In *Joyce*, a student sued a school district after a car struck her in a marked crosswalk in a dangerous intersection while she was on her way to school. By crossing the dangerous intersection, children could access the school through an open school gate. (*Id.* at p. 295.)  The school's principal cut a hole in the fence to create that gate. *Joyce* upheld a jury's verdict finding that the dangerous condition of property was the gate or opening in the fence, which "encouraged" students to cross at a dangerous intersection. (*Id.* at pp. 299-300.)

*Joyce* relied on *Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 147, which considered whether a bus stop may be deemed a dangerous condition of property, because bus users, to reach the stop, had to cross at a dangerous crosswalk. *Bonnano* rejected the Transit Authority's contention it could not be liable for an injury occurring on a street it did not control or own. (*Id.* at p. 151.)  The Transit Authority "owned and controlled its own bus stop, and a condition of *that* property, its physical situation, caused users of the bus stop to be at risk from the immediately adjacent property . . . ." (*Ibid.*)  *Joyce* and *Bonnano* therefore apply, in the public entity

---

[7]      The school in *Joyce* was a public entity, and therefore the claims arose under Government Code sections 830 and 835, regarding dangerous conditions of property.

6

context, the general principle that a landowner's duty of care "encompasses a duty to avoid exposing persons to risks of injury that occur off site if the landowner's property is maintained in such a manner as to expose persons to an unreasonable risk of injury offsite." (*Barnes v. Black, supra,* 71 Cal.App.4th at p. 1478.)

Campos attempts to apply that principle here by arguing that the location of the exit from OMHS constitutes a "dangerous condition of property" similar to that in *Joyce*.[8] OMHS's exit is located mid block on West 17th Street. Approximately 25 percent of the 300 students walk east on West 17th Street to Figueroa Street to the unmarked crosswalk. But, Campos speculates, if the exit was relocated to St. Georgia Street, then children would be diverted to a marked and controlled crosswalk at West 18th Street to cross Figueroa Street. Campos thus argues that the location of OMHS's exit is analogous to *Joyce* because it "encourag[es] the path of the students," as did the open gate in *Joyce*.

*Joyce* is distinguishable. In *Joyce*, the school's principal altered the school's design by cutting an opening in a fence that was immediately next to a dangerous intersection. This opening "encouraged" students to cross the dangerous intersection to enter the school through that opening. In contrast, the allegedly dangerous intersection or unmarked crosswalk at issue here is not next to OMHS. The crosswalk is not adjacent to or otherwise touch school grounds. The crosswalk is around the corner from OMHS, separated by other buildings, including a Staples store. And, based on aerial photographs Campos submitted, it does not appear that the crosswalk is even visible from OMHS. The location of OMHS's exit in no way "encourages" students to walk one way or the other to get to a public bus stop around the corner on Figueroa. (Cf. *Joyce, supra,* 110 Cal.App.4th at p. 299 [" '[t]here is a difference between failing to take action to influence or affect a danger and encouraging students to expose themselves to a danger' "].)

---

[8] OMHS's and Alliance's respondents' brief argues that the alleged dangerous condition of property is the intersection where the truck struck Campos. We interpret Campos's argument to be that the alleged dangerous condition of property is the school's exit.

Moreover, it is unclear what relationship the location of OMHS's exit has to a student's decision at what place to cross Figueroa. Campos tries to make such a connection between the exit and the unmarked crosswalk at Figueroa by alleging that the School knew that 25 percent of its 300 students walk up West 17th Street and turn right onto Figueroa Street to cross at the unmarked crosswalk. Assuming that is true, which we do when reviewing a ruling on a demurrer, that fact is irrelevant to whether the exit *encouraged* students to use the unmarked crosswalk at Figueroa. The school's exit did not increase or intensify any existing danger from unmarked crosswalks located around the block from the school. To find otherwise would stretch a landowner's and/or a school's obligations far beyond that found in *Joyce.*

B.      *Vehicle Code section 21368.*

Campos next appears to contend that Vehicle Code section 21368 imposes a duty of care on OMHS and Alliance.[9] Vehicle Code section 21368 states: "Whenever a marked pedestrian crosswalk has been established in a roadway contiguous to a school building or the grounds thereof, it shall be painted or marked in yellow as shall be all the marked pedestrian crosswalks at an intersection in case any one of the crosswalks is required to be marked in yellow. Other established marked pedestrian crosswalks may be painted or marked in yellow if either (a) the nearest point of the crosswalk is not more than 600 feet from a school building or the grounds thereof, or (b) the nearest point of the crosswalk is not more than 2,800 feet from a school building or the grounds thereof, there are no intervening crosswalks other than those contiguous to the school grounds, and it appears that the facts and circumstances require special painting or marking of the crosswalks for the protection and safety of persons attending the school. There shall be

---

[9]      Although Campos argues in her opening brief that Vehicle Code section 21368 imposes a duty of care on OMHS and Alliance, she states in her reply brief that she "has never alleged that . . . these sources [including section 21368] impose a Mandatory Duty on SCHOOL RESPONDENTS and did not allege negligen[ce] per se in their cause of action. Since this is a negligence action, these standards can be used to establish the duty of reasonable care as opposed to SCHOOL RESPONDENTS['] position that their 'responsibility "ended" at the fence lines[.]' "

painted or marked in yellow on each side of the street in the lane or lanes leading to all yellow marked crosswalks the following words, 'SLOW—SCHOOL XING,' except that such words shall not be painted or marked in any lane leading to a crosswalk at an intersection controlled by stop signs, traffic signals, or yield right-of-way signs.  A crosswalk shall not be painted or marked yellow at any location other than as required or permitted in this section."  Section 21368 thus establishes three categories of crosswalks: (1) crosswalks contiguous with school grounds that " 'shall' " be painted yellow, (2) crosswalks within 600 feet of school grounds that " 'may' " be painted yellow, and (3) all other crosswalks which " 'shall not' " be painted yellow.  (*Cerna, supra,* 161 Cal.App.4th at p. 1350.)

Taking a broad view of the meaning of "contiguous," Campos argues that Vehicle Code section 21368 imposes a duty on OMHS and Alliance to have the unmarked crosswalk at Figueroa painted yellow.[10]  *Cerna* rejected such a broad interpretation.  In *Cerna*, a motorist struck a family on their way to school as they walked in a marked, white crosswalk at an uncontrolled intersection.  (*Cerna, supra,* 161 Cal.App.4th at p. 1345.)  *Cerna* found that Vehicle Code section 21368 was inapplicable because the intersection was not contiguous to school grounds.  (*Cerna*, at p. 1350.)  Rather, the school's sole entrance was three blocks from the crosswalk where the plaintiffs were injured and 50 feet from the periphery of undeveloped school property.  (*Ibid.*)

As Campos does here, the *Cerna* plaintiffs nonetheless argued for a "looser meaning of contiguous to mean simply near," rather than the primary meaning of "physically touching."  (*Cerna, supra,* 161 Cal.App.4th at p. 1350.)  *Cerna* noted that one court broadly construed "contiguous."  (*Lewis v. City of Los Angeles* (1982) 137

---

**10**     We will assume without deciding that Vehicle Code section 21368 applies to schools, as opposed to, for example, a city or other government entity responsible for roadways.  (See, e.g., Veh. Code, § 21373 [the governing board of a school district may request the appropriate entity (e.g., city, county, city and county or state agency) to install traffic control devices; upon such request, the appropriate entity shall undertake an engineering and traffic survey to determine whether the requested crossing protection is warranted, and, if so, shall be installed by the appropriate entity].)

Cal.App.3d 518.) *Lewis* interpreted "contiguous" not to require an actual touching. (*Id.* at pp. 520-522.) Rather, Vehicle Code section 21368 refers to roadways not necessarily " 'physically touching or in actual contact with the school grounds but were certainly close in proximity . . . . [so that there] would be a natural relationship between that roadway and its crosswalks and the school grounds.' " (*Lewis,* at p. 522.)

Cerna rejected *Lewis*'s broad interpretation of "contiguous": "If Vehicle Code section 21368 is interpreted to mandate yellow crosswalks on roadways that are near schools and have a 'natural relationship' to school grounds, how are we to understand the provision allowing discretion for the establishment of crosswalks on roadways within 2,800 feet of school grounds?" (*Cerna, supra,* 161 Cal.App.4th at p. 1351.) In other words, *Lewis*'s interpretation of Vehicle Code section 21368 conflates the first category of crosswalks (those that " 'shall' " be painted yellow because they are contiguous to school grounds) with the second category of crosswalks (those that " 'may' " be painted yellow because they are within a specified distance of school grounds). (*Cerna*, at pp. 1350-1351.) Such an interpretation renders the second category of crosswalks—those within a certain distance of schools that " 'may' " be painted yellow—ambiguous and, possibly, surplusage.

Although we agree with *Cerna*'s conventional, limited interpretation of "contiguous," we note that not even under an expansive view of Vehicle Code section 21368 could the crosswalk at issue be considered contiguous to OMHS. The crosswalk in *Cerna*, for example, was 50 feet from the nearest school property, and the only school entrance was three blocks from the crosswalk. (*Cerna, supra*, 161 Cal.App.4th at p. 1351.) The crosswalk was therefore not contiguous to school grounds. (*Ibid.*) The crosswalk in *Lewis* was 210 feet and a city block from the periphery of school grounds. As a matter of law, the crosswalk was not contiguous to school grounds. (*Lewis v. City of Los Angeles, supra,* 137 Cal.App.3d at p. 522.)

Here, the "nearest point of the crosswalk" where Campos was injured is not more than 600 feet from a school building or grounds, and "the nearest point of the crosswalk is not more than 2,800 feet from a school building or the grounds thereof where there are

10

no intervening crosswalks other than those contiguous to the school grounds." Aerial views of the area show that the subject crosswalk is around the corner from the school and separated by several buildings, including a Staples store. Campos does not specify how far the crosswalk is from the school, but it is around the corner with no part of it touching school grounds. There is no "natural relationship" between that crossing and the school. Vehicle Code section 21368 is therefore inapplicable.

C. *Traffic manuals.*

Although Campos concedes that they do not create a mandatory duty of care, she cites to the California Department of Transportation Traffic Manual on Traffic Control Devices (exhibit 3 to the SAC, referred to as the California Traffic Manual),[11] the federal Manual on Uniform Traffic Control Devices (MUTCD),[12] and California Vehicle Code sections 21368 and 21373, referring to them as "templates" for that duty. Campos therefore appears to argue that complying with, for example, recommendations in the California Traffic Manual, MUTCD, and the discretionary provisions of the Vehicle Code are ways in which the School could have satisfied its duty of care to her.[13]

---

[11] The 1996 version Campos relies on has been superseded by more recent versions. It also appears that Chapter 10, School Area Pedestrian Safety in the 1996 version was replaced in September 2006 by Chapter 7, Traffic Controls for School Areas. (*www.dot.ca.gov/hq/traffops/engineering/mutcd/index.htm*.)

[12] The MUTCD is published by the Federal Highway Administration under title 23 of the Code of Federal Regulations (CFR), Part 655, Subpart F. (*http://mutcd.fhwa.dot.gov/*.) The MUTCD "defines the standards used by road managers nationwide to install and maintain traffic control devices on all public streets, highways, bikeways, and private roads open to public travel." Part 7 of the MUTCD concerns traffic controls for school areas.

[13] Campos also appears to cite these items primarily as examples of ways in which the School breached its duty; for example, by failing to "follow the current practices in applying uniform measures for school age pedestrians"; by failing to ask for traffic control devices; and by failing to organize student and/or staff pedestrian advisory committees.

11

*Searcy v. Hemet Unified School Dist.* (1986) 177 Cal.App.3d 792 (*Searcy*) rejected a similar argument. In *Searcy*, a vehicle struck a student who was walking home from school. The student cited safety manuals and the Vehicle Code as sources of a duty of care. *Searcy* found that Vehicle Code section 21373, which authorizes school districts to ask the proper governmental agency to install traffic control devices, does not impose a mandatory duty. (*Searcy,* at p. 801.) Similarly, guidelines in the School Area Pedestrian Safety manual, promulgated by the California Department of Transportation to recommend standards and procedures aimed at bringing about desirable safety conditions, were not internally binding on the school district. (*Id.* at pp. 801-802; accord *Cerna, supra,* 166 Cal.App.4th at pp. 1359-1360.) "Although these advisory materials can be utilized by governmental agencies to improve student safety, the authority they provide is discretionary; they do not impose mandatory duties upon School District." (*Searcy*, at p. 801.)

Instead, schools generally are not insurers of their students' physical safety, "notwithstanding their discretionary authority to influence conditions affecting the safety of students' transportation to and from school." (*Searcy, supra,* 177 Cal.App.3d at p. 804; see also *id.* at pp. 804-805 [as a general rule school districts are under no obligation to supply traffic protection to students en route to and from school, and discretionary powers to, for example, hire crossing guards, do not create mandatory duties]; *Bassett v. Lakeside Inn, Inc.* (2006) 140 Cal.App.4th 863, 872 [under Education Code section 44808, schools generally are not liable for injuries occurring off campus and not during school hours unless they result from the school's negligence occurring on school grounds or as a result of a specific undertaking performed in a negligent manner].) Thus, whether we view the School as a private entity or as a public entity, the traffic manual and Vehicle Code do not impose mandatory duties on the School.

We therefore conclude that Campos has failed to state a viable theory of duty. If the School's obligations are commensurate with a public entity school's obligations, then Campos has failed to allege facts showing that the School had a duty to ensure Campos's safety after school while not on school premises. If the School's duties arise under a

12

general or common law theory of negligence, then Campos fails to identify a dangerous condition of property that the School controlled that led to her injuries.  The School's demurrer was properly sustained.

We also conclude that Campos is not entitled to leave to amend.  The SAC appears to be the fourth complaint Campos has filed in connection with the incident.  On appeal, she did not provide the prior complaints, demurrers or the transcripts from the hearing on the demurrer to the SAC, which might be relevant to any request for leave to amend.  We therefore conclude that she cannot allege any additional facts to establish a duty of care.

**DISPOSITION**

The judgment is affirmed.  Defendants and respondents OMHS and Alliance are to recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

KITCHING, J.

14