Filed 4/17/13  Stein v. City of San Diego CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MARC STEIN,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>CITY OF SAN DIEGO,<br><br>　　　Defendant and Respondent. | D061428<br><br><br><br>(Super. Ct. No. 37-2011-00086918-<br>　CU-PO-CTL) |


APPEAL from an order of the Superior Court of San Diego County, Gonzalo Curiel, Judge.  Affirmed.


Marc Stein brought suit against the City of San Diego (the City) after he tripped over a median while crossing the street and was injured.  The City brought a motion for summary judgment, which the court granted.

Stein appeals, contending the superior court erred in granting summary judgment because the court should have found the City had a duty to provide adequate lighting. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Stein had been at Mission Beach collecting cans and using his metal detector for approximately four and one-half hours when he decided to leave. Although he had used a crosswalk to get to the beach, he decided to take a more direct route back to his car and crossed Mission Boulevard midblock between Deal and Coronado Courts. It was about 7:30 p.m. when he started walking back to his car.

Mission Boulevard has one northbound lane and one southbound lane. It separates the Pacific Ocean and Mission Bay. The lanes of travel are separated by a center median. On either side of the center median, there is a set of double yellow lines and then yellow stripes coming from the median to the curb surrounding it. The median itself is black with a grey curb surrounding it. The median has existed since at least 1955. Eight months before Stein crossed Mission Boulevard, new asphalt overlay was applied to the median.

While crossing the street, Stein was carrying a metal detector, a scoop, and two garbage bags of aluminum cans. The metal detector and scoop were each about five feet long. The garbage bags were the type that are used to line trash cans at the beach, and they were half full. Stein knew there was a median in the middle of the street where he was crossing, but he did not remember the median was there when he crossed the street that evening. He tripped over the median and broke his hip. Stein stated it was "pitch black" at the time he tripped over the median.

Stein filed suit against the City. His operative complaint listed causes of action for negligence, willful failure to warn (Civ. Code, § 846), and dangerous condition of public

property. Stein alleged there was no lighting or reflective material to indicate the median was raised. He further alleged the City knew or should have known that this portion of Mission Boulevard was a "high pedestrian traffic area, which would be crossed at night."

The City filed a motion for summary judgment. In support of its motion, the City proffered 28 "undisputed material facts." The only fact Stein attempted to dispute was: "The lanes of travel [of Mission Boulevard] are separated by a center median. On either side of the center median, there is a set of double yellow lines and then yellow stripes coming from the median to the double yellow lines on an angle. The median itself is black with a grey cement curb surrounding it." Stein disputed this fact by stating: "The median was the same color as the street."

Stein did not dispute any other fact, including that he did not believe anything was wrong with the median; he had no knowledge of anyone informing the City that there was a problem with the median prior to his injury; he had no evidence of anyone else falling as a result of tripping over the median; the City was unaware of any problem with the median prior to Stein's fall; and Stein's trip and fall was the first such accident of which the City was aware.

In a thoroughly written minute order, the superior court granted the motion for summary judgment. The court ruled that the first cause of action for general negligence and the first count of the second cause of action for negligence both failed because a public entity, like the City, cannot be liable for common law negligence or premises liability negligence. The court also found the second count of the second cause of action for failure to warn under Civil Code section 846 failed because that statute does not apply

3

to the City.  Finally, the court ruled that, under the undisputed facts, Stein could not establish a cause of action for dangerous condition of public property under Government Code section 835.  In doing so, the court noted that the City had no duty to provide or maintain lighting.  (See *Plattner v. City of Riverside* (1999) 69 Cal.App.4th 1141, 1444 (*Plattner*).)

Stein timely appealed.

DISCUSSION

Initially, we observe that Stein, as an in propria persona litigant, is "entitled to the same, but no greater, rights than represented litigants and are presumed to know the [procedural and court] rules."  (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795.)  For any appellant, "[a]ppellate briefs must provide argument and legal authority for the positions taken.  'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citations.]' "  (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.)  "We are not bound to develop appellants' argument for them.  [Citation.]  The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived."  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

Here, Stein raises only one issue in his opening brief:  The superior court erred in concluding as a matter of law the City did not have a duty to provide lighting where Stein crossed Mission Boulevard.  Although Stein argues his "other claims also benefit by this same principle and the Superior Court erred in concluding otherwise in its grant of

4

summary judgment[,]" he fails to explain how the court's allegedly flawed conclusion impacts any other issue involved in the summary judgment. As such, we deem all other issues related to the minute order waived. (See *Nelson v. Avondale Homeowners Assn.*, *supra*, 172 Cal.App.4th at p. 862.)

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers, except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) Generally, if all the papers submitted by the parties show there is no triable issue of material fact and the "moving party is entitled to a judgment as a matter of law" (Code Civ. Proc., § 437c, subd. (c)), the court must grant the motion for summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

The issue Stein raises here has been consistently answered by California courts. "A public entity is under no duty to light its streets." (*Mixon v. Pacific Gas & Electric Co.* (2012) 207 Cal.App.4th 124, 133 (*Mixon*); see *Plattner*, *supra*, 69 Cal.App.4th at p. 1444; *Antenor v. City of Los Angeles* (1985) 174 Cal.App.3d 477, 483 (*Antenor*).) Stein, however, argues "the street and median being the same color created a peculiar condition that rendered lighting necessary to make the street safe for pedestrian travel." We disagree.

A duty to light, "and the consequent liability for failure to do so," may arise only if there is "some peculiar condition rendering lighting necessary in order to make the streets safe for travel." (*Antenor*, *supra*, 174 Cal.App.3d at p. 483.) "In other words, a prior

dangerous condition may require street lighting or other means to lessen the danger but the absence of street lighting is itself not a dangerous condition." (*Mixon*, *supra*, 207 Cal.App.4th at p. 133.)

A "[d]angerous condition" is defined as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used." (Gov. Code, § 830, subd. (a).) "The existence of a dangerous condition is ordinarily a question of fact but 'can be decided as a matter of law if reasonable minds can come to only one conclusion.' " (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1347 (*Cerna*).)

" '[A] claim alleging a dangerous condition may not rely on generalized allegations [citation] but must specify in what manner the condition constituted a dangerous condition.' [Citation.] A plaintiff's allegations, and ultimately the evidence, must establish a physical deficiency in the property itself. [Citations.] A dangerous condition exists when public property 'is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself,' or possesses physical characteristics in its design, location, features or relationship to its surroundings that endanger users." (*Cerna*, *supra*, 161 Cal.App.4th at pp. 1347-1348, italics omitted.)

Here, the only material fact Stein disputed in opposing the City's motion for summary judgment was: "The lanes of travel [of Mission Boulevard] are separated by a center median. On either side of the center median, there is a set of double yellow lines and then yellow stripes coming from the median to the double yellow lines on an angle.

6

The median itself is black with a grey cement curb surrounding it." Stein disputed this fact by stating: "The median was the same color as the street." However, Stein's statement does not place the material fact in dispute. He does not dispute the existence of the double yellow lines around the median or yellow stripes coming from the median. Nor does he claim the median was not surrounded by a grey curb. Instead, he merely asserts the median was the same color as the street. This assertion does not contradict the material fact offered by the City. Thus, we consider all 28 material facts undisputed for purposes of the City's motion and treat Stein's contention as an additional material fact offered in opposition to the motion for summary judgment. (See Code Civ. Proc., §437c, subd. (b)(3).)

Even considering the fact that the median was the same color as the street, we still agree with the superior court that Stein cannot establish a dangerous condition creating liability for the City for failing to maintain lighting at the median where Stein was injured. The median was clearly marked by yellow lines and a grey curb. Stein admitted there was nothing wrong with the median. He also agreed that he was aware of the median, but forgot about it the night he was injured. He did not claim he was unable to see the median, although it could be implied that he could not do so because it was "pitch black." "But darkness is a naturally occurring condition that the city is under no duty to eliminate." (*Plattner*, *supra*, 69 Cal.App.4th at p. 1445.)

Stein has not offered any evidence that the median constituted a dangerous condition that would not be apparent to pedestrians crossing Mission Boulevard with due care. (See *Sun v. City of Oakland* (2008) 166 Cal.App.4th 1177, 1193.) Indeed, Stein

7

was injured when he attempted to cross Mission Boulevard in the dark, carrying a five-foot long metal detector, a five-foot long scoop, and two trash bags half full of cans. In other words, Stein failed to exercise due care in crossing Mission Boulevard. And there was no evidence that any other pedestrian had been injured crossing Mission Boulevard after tripping over the median or that the City was aware of any injuries from a pedestrian tripping over the median prior to Stein's injury. The City simply is not liable under these circumstances, and we agree with the superior court that summary judgment was warranted. (See *Swaner v. City of Santa Monica* (1984) 150 Cal.App.3d 789, 799 ["If . . . it can be shown that the property is safe when used with due care and that a risk of harm is created only when foreseeable users fail to exercise due care, then such property is not 'dangerous' within the meaning of [Government Code] section 830, subdivision (a)."].)

DISPOSITION

The order is affirmed.


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.


8