Filed 7/24/14  Barnett v. City of Desert Hot Springs CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SHELIA BARNETT, | |
| Plaintiff and Appellant, | E054982 |
| v. | (Super.Ct.No. RIC511421) |
| CITY OF DESERT HOT SPRINGS, | O P I N I O N |
| Defendant and Respondent. | |
| BERTHRAM BERRY NWENE, | |
| Plaintiff and Appellant, | (Super.Ct.No. INC081790) |
| v. | |
| CITY OF DESERT HOT SPRINGS, | |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  John G. Evans, Judge.

Reversed.

Law Offices of Armen M. Tashjian, Armen M. Tashjian and Daniel Setareh for Plaintiffs and Appellants.

Meyers, Nave, Riback, Silver & Wilson, Rachel Wagner, Kevin E. Gilbert; Graves & King and Harvey W. Wimer III for Defendant and Respondent.[1]

## I. INTRODUCTION

Plaintiffs and appellants, Berthram Berry Nwene and Shelia Barnett, appeal from the trial court's granting of the motion for summary judgment of defendant and respondent, City of Desert Hot Springs (the City).

The record on appeal can be characterized as "meager," at best. From plaintiffs' pleadings it would appear that plaintiffs' daughter, age 13, was struck and killed by a hit-and-run motorist as she was walking to school on the dirt shoulder of Palm Drive.[2] Plaintiffs' complaint appears to focus on the basic contention that Palm Drive was dangerous at the time of the accident, because there was no improved pedestrian sidewalk running parallel to and adjacent to the northbound lanes of Palm Drive.

At the motion for summary judgment, the City submitted a traffic collision report, a declaration by a sergeant of the City's police department, authenticating 11 photographs

---

[1] The law firm of Graves & King and Harvey W. Wimer III substituted into this case for the purpose of oral argument only.

[2] From the evidence submitted on the City's motion for summary judgment, it is unclear as to whether plaintiffs' decedent was walking on the paved portion of the roadway, the dirt shoulder, or in an area well removed from the roadway. By way of the undisputed facts, however, plaintiffs' decedent was walking on the dirt shoulder of the roadway.

of the roadway and adjacent dirt shoulder and generally describing the roadway and weather conditions at the time of the accident, a declaration of the commander of the police department describing average traffic volume and accident history for Palm Drive in the years preceding the accident, and the declaration of Timothy Wassil in which he attempts to lay the foundation for the application of the design immunity[3] relative to a 1999 plan and design of the roadway. In opposition, plaintiffs submitted the declaration of Alex Bias, a former mayor of the City. The declaration, in essence, sets forth that on numerous occasions he expressed concerns about the dangerousness of Palm Drive because of the failure of the City to provide sidewalks for the protection of pedestrians.

Each side objected to the other's evidence. As for the City's evidence, the trial court sustained plaintiffs' objections to the traffic collision report and the declaration of Wassil with the attached plan and design. The City's objections to the declaration of Alex Bias were sustained.

As a result of the court's evidentiary rulings, the City's evidence consisted of 11 photographs of the roadway and adjacent dirt shoulder with a general description of the roadway and an accident history of the roadway showing no similar accidents. Plaintiffs were left with no opposing evidence. The court granted the City's motion, finding no triable issue of material fact as to the dangerousness of the roadway.

---

[3] Government Code section 830.6. All further statutory references are to the Government Code unless otherwise indicated.

On appeal, plaintiffs make three arguments: (1) the City failed to meet its initial burden of production so as to shift the burden to plaintiffs to demonstrate the existence of a triable issue of material fact; (2) plaintiffs' evidence created a triable issue of material fact;[4] and (3) the court erred in not granting a continuance of the hearing pursuant to Code of Civil Procedure section 437c, subdivision (h).

We agree with plaintiffs that the City failed in its initial burden of production; as a result, the burden never shifted to plaintiffs.[5]

## II. ANALYSIS

### A. *Dangerous Condition of Public Property*

A governmental entity is liable for an injury caused by its property if at the time of the injury: (1) the property was in a dangerous condition; (2) the injury was proximately caused by the dangerous condition; (3) the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred; and (4) the dangerous condition was negligently or wrongfully created by an employee of the entity, or the entity had

---

[4] Within this, plaintiffs argue that the court erred in sustaining the City's objections to the declaration of Bias. We do not address this argument because plaintiffs have failed to properly seek review of these rulings. "It is appellant's 'burden on appeal to affirmatively challenge the trial court's evidentiary ruling, and demonstrate the court's error.' [Citation.] While plaintiffs on appeal explicitly state that the trial court erred in sustaining the objections to the . . . declaration, they fail 'to identify the court's evidentiary ruling as a distinct assignment of error, and there is no separate argument heading or analysis of the issue.' [Citations.]" (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074.)

[5] Because we agree with plaintiffs on their initial argument we do not address whether the court erred in not granting plaintiffs a continuance under Code of Civil Procedure section 437c, subdivision (h).

4

actual or constructive knowledge of the dangerous condition a sufficient time ahead of the injury so as to take measures to protect against the dangerous condition. (§ 835.)

For the property to be considered in a "dangerous condition," it must create "a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).)

"The qualification that the property is dangerous only when *used with due care* does not require the plaintiff to prove due care on the part of the third party . . . involved in the plaintiff's injury. Rather, the statute means that the condition is dangerous if it creates a substantial risk of harm when used with due care by the public generally, as distinguished from the particular person charged as concurrent tortfeasor." (*Murrell v. State of California ex rel. Dept. Pub. Wks.* (1975) 47 Cal.App.3d 264, 267.) "[I]f the condition of the property was such that it created a substantial risk of injury to a person using the property with due care, an injured plaintiff is not required to prove that the driver of the third party vehicle . . . was exercising due care at the time of the injury. That is, the third party's negligent use does not negate the existence of a dangerous condition. . . . What we must determine therefore is whether in the abstract the factual situation in the case at bench could be found by the finder of fact to have created a dangerous condition without regard to the specific conduct of [the third party driver] or the plaintiff on this particular occasion." (*Mathews v. State of California ex rel. Dept. of Transportation* (1978) 82 Cal.App.3d 116, 121; see *Ducey v. Argo Sales Co.* (1979) 25

5

Cal.3d 707, 718-719 [lack of median barrier created a substantial risk of injury even in the absence of negligent conduct].)

"'Whether property is in a dangerous condition often presents a question of fact, but summary judgment is appropriate if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines that no reasonable person would conclude the condition created a substantial risk of injury when such property is used with due care in a manner which is reasonably foreseeable that it would be used. [Citations.]' [Citation.]" (*Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 234.)

B. *Summary Judgment*

A trial court properly grants summary judgment when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

A moving party defendant is entitled to summary judgment if it establishes a complete defense to the plaintiff's causes of action, or shows that one or more elements of each cause of action cannot be established. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 849.) A moving party defendant bears the initial burden of production to make a prima facie showing that no triable issue of material fact exists. Once the initial burden of production is met, the burden shifts to the responding party plaintiff to

6

demonstrate the existence of a triable issue of material fact. (*Id.* at pp. 850-851.) From commencement to conclusion, the moving party defendant bears the burden of persuasion that there is no triable issue of material fact and that the defendant is entitled to judgment as a matter of law. (*Id.* at p. 850.)

On appeal following the grant of summary judgment, we review the record de novo, considering all of the evidence except that to which objections were made and sustained. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Ibid.*)

"Our review of the summary judgment motion requires that we apply the same three-step process required of the trial court. [Citation.] 'First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. [Citations.] [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. [Citations.] . . . [¶] . . . [T]he third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]' [Citation.]" (*Todd v. Dow* (1993) 19 Cal.App.4th 253, 258.)

"'The purpose of a summary judgment proceeding is to permit a party to show that material factual claims *arising from the pleadings* need not be tried because they are not

in dispute.' [Citation.] Materiality depends on the issues in the case, and what matters are at issue is determined by the pleadings, the rules of pleadings, and the substantive law. [Citation.] '*The complaint measures the materiality of the facts tendered in a defendant's challenge to the plaintiff's cause of action.*' [Citation.]" (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 172, italics added.)

Looking to plaintiffs' complaint, the following is alleged:

"9. Defendant CITY OF DESERT HOT SPRINGS . . . owned, operated, designed, planned, engineered, maintained, inspected, repaired, and controlled the streets, roadways and sidewalks of the City of Desert Hot Springs, including but not limited to the area of and/or immediately adjacent to Palm Drive at or near the intersection [of] Camino Campesino, Desert Hot Springs, California . . . . [¶] . . . [¶]

"15. On November 16, 2007, at approximately 7:00 a.m., while walking along the dirt shoulder of northbound Palm Drive near the intersection with Camino Campesino, Decedent was struck by a hit-and-run driver and was left on the side of the roadway to die. . . .

"16. Defendants . . . failed to require installation of sidewalks . . . and failed to control the streets, roadways and sidewalks . . . and . . . failed to provide proper pedestrian walkways . . . and failed to provide any signs and/or warnings of the narrowing road creating a trap . . . along Palm Drive at or near the intersection with Camino Campesino . . . thereby, creating dangerous conditions . . . exposing . . . pedestrians to vehicle traffic. These dangerous conditions . . . proximately caused the

8

death of Decedent when she was struck by a vehicle operated by the hit-and-run motorist

. . . . [¶] . . . [¶]

"18. . . . Defendants, and each of them, knew or should have known the subject roadway leading to the Dessert [*sic*] Middle School was unsafe for pedestrian traffic and despite such knowledge failed to take proper precautions for the safety of the pedestrians and students including Plaintiff's Decedent.

"[19]. Additionally, signs, warnings, safety crossing guards or other devices were necessary to warn of these dangerous conditions which endangered the safe movement of pedestrians, students . . . which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care."

As framed by the above pleadings, plaintiffs are, in essence, contending that Palm Drive was dangerous because the City failed to provide sidewalks or safe pedestrian walkways, failed to provide signs and/or warnings of a narrowing roadway, and that these conditions created a trap to pedestrians causing the decedent's death.

The City is entitled to summary judgment if by way of its undisputed facts and supporting evidence it establishes a complete defense to the above allegations or shows that plaintiffs cannot prove one or more elements of their cause of action. (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 848 [Fourth Dist., Div. Two].)

Stated otherwise, the City is entitled to summary judgment if it establishes that the roadway and adjacent shoulder were not in a dangerous condition or a cause of the

9

plaintiffs' injury or, alternatively, that plaintiffs could not show that the roadway was in a dangerous condition or a cause of the injury.

"The defendant must demonstrate that under no hypothesis is there a material factual issue requiring trial. [Citation.] If the defendant does not meet this burden, the motion must be denied. Only if the defendant meets this burden does 'the burden shift[] to plaintiff to show an issue of fact . . . .' [Citation.]" (*Anderson v. Metaclad Insulation Corp.* (1999) 72 Cal.App.4th 284, 289-290.) Here, the City did not meet its initial burden.

1. The City's Undisputed Facts and Supporting Evidence Did Not Establish a Complete Defense to the Allegations of a Dangerous Condition of Public Property

First, the City did not, by way of its undisputed facts and supporting evidence, affirmatively establish that the roadway and adjacent shoulder were not in a dangerous condition. The undisputed facts and evidence upon which the motion was granted were:

"1. In the morning of November 16, 2007, before 8:25 a.m., a fatal hit and run accident occurred on Palm Drive in Desert Hot Springs. The collision occurred between Camino Campesino and Avenue Aventura streets."

"2. The area of Palm Drive where the accident occurred is straight, level and paved, with an unobstructed view in all directions."

"3. The area of Palm Drive where the accident occurred is a four-lane roadway, with two lanes of travel in each direction. There was a solid white line marking the edge of the roadway on the east side of Palm Drive, also known as a 'fog line.'"

10

"4. Conditions the morning of the accident were clear, sunny and dry."

"5. The accident occurred on the east side of Palm Drive, when a northbound driver hit a pedestrian as she was walking in the dirt area adjacent to the road."

"6. From May 2002 until November 16, 2007, there were no auto-pedestrian accidents in this area of Palm Drive."

"7. From May 2002 until November 16, 2007, there were nine auto accidents (not involving pedestrians) in this area of Palm Drive, with varying causes."

As support for these undisputed facts, the City submitted 11 photographs of the roadway which were attached to the declaration of Radames Gil, various traffic volume counts taken over a space of years in conjunction with traffic collision reports, and a spread sheet depicting the number of accidents in the area.

Based on these undisputed facts and the evidence, the trial court granted summary judgment. As set forth in its statement of decision: "The court finds that [the City's] Undisputed Facts numbers 1-4 are undisputed. . . . The photographs of the scene . . . demonstrate that there are no vision obstructions which would prevent a motorist from seeing a pedestrian, the roadway was flat, straight and level, the roadway markings were in good condition, the fog line was clearly marked, and the roadway surface was in good condition and free of any defects. . . . Based upon the court's review of the photographs, and . . . [undisputed facts] nos. 1 through 4, the court finds that [the City] has presented sufficient evidence that 'no reasonable person could find that Palm Drive in [the] area of the incident constituted a dangerous condition' so as to shift the burden to plaintiffs to

11

demonstrate that one or more triable issues of fact exist as to whether a dangerous condition existed." We believe this analysis oversimplifies the issue.

Under our facts the issue as to whether there exists a dangerous condition of the roadway and adjacent dirt shoulder is, to a large extent, the subject of expert testimony. Certainly, a court under section 830.2 can as a matter of law determine that a condition of property does not pose a substantial risk of injury as opposed to a trivial or insignificant risk. (*Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 732.)[6] This is not our case, however. We do not believe, in this instance without the aid of expert testimony, that a layperson can conclude, based on 11 photographs of a roadway, that a dangerous condition of public property is not present as a matter of law. *Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830 (*Carson*) and *Miller v. Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689 (*Miller*) are instructive.

In *Carson*, the plaintiffs sued the City of San Diego on a theory of a dangerous condition of public property. The plaintiffs' decedent, who was driving southbound on Colusa Street, brought her vehicle to a stop behind the limit line at the intersection of Colusa Street and Friars Road. It was her intention to turn left and proceed eastbound on

---

[6] Section 830.2 provides: "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." As provided in the Law Revision Commission comment to section 830.2, the rule set forth in this code section stems primarily from "cases involving dangerous conditions of sidewalks."

12

Friars Road. After bringing her vehicle to this initial stop, she proceeded closer to Friars Road and stopped again. She then began her left turn; at this point, a westbound motorist on Friars Road was approximately 50 feet from the plaintiffs' decedent's vehicle. The cars collided, causing the death of plaintiffs' decedent. At the time of the accident there was an address sign and trees on the northeast corner of Friars Road and Colusa Street.

As framed by the court: "One of the major issues addressed by the testimony was whether and to what degree the address sign and the trees located along the north side of Friars Road obstructed the visibility of drivers stopped on Colusa Street at the north side of the intersection." (*Carson, supra,* 36 Cal.3d at p. 838.) A nearby resident "testified that the driver of a southbound car on Colusa Street did not have a clear view of oncoming westbound traffic until the front of [the] car had moved past the stop sign limit line and was protruding slightly into Friars Road past its north curb. This evidence suggested that the sign and/or shrubbery obstructed decedent's view at both her stopping points." (*Ibid.*) The plaintiffs did not call an expert to testify on the issue of dangerous condition of public property.

After presentation of the plaintiffs' case, the trial court granted a nonsuit. In reversing the grant of nonsuit, the Supreme Court discussed the city's argument that the plaintiffs needed expert testimony to establish the existence of a dangerous condition. "'[T]he decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the [expert] witness or

13

whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' [Citations.] Expert opinion evidence is required in some circumstances. 'If the matter in issue is one within the knowledge of experts *only* and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert opinion evidence in order to establish a prima facie case.' [Citations.]" (*Carson*, *supra,* 36 Cal.3d at p. 844; see *McCoy v. Gustafson* (2009) 180 Cal.App.4th 56, 99.) After discussing various cases, some in which expert testimony was necessary and some in which it was not, the court in *Carson* concluded: "'Evaluated by these standards, proof of an obstruction at the Colusa Street-Friars Road intersection did not require expert testimony. *No special expertise was required* to show that a driver looking east down Friars Road would have difficulty seeing oncoming westbound traffic. Accordingly, it was error to grant a nonsuit for the City on this ground." (*Carson, supra,* at p. 845, italics added.)

In accord with the above discussion, the court in *Miller, supra,* 8 Cal.3d 689 came to an opposite conclusion as to the necessity for expert opinion on the facts before it. There, the plaintiffs purchased a home on Country Club Drive. Country Club Drive served "both as a passageway for vehicular traffic and, in times of heavy rain, as a flood control channel. . . . [T]he street was designed with 18-inch curbs in order to contain the rainwater that ran through the canyon to the valley below. [Plaintiffs'] home was situated at a 90-degree curve in this street, so that it lay in a direct line with the natural water runoff. At the head of Country Club Drive [was] . . . a flood control structure known as

14

the Upper Debris Basin. The dam-like structure [was] built . . . in 1929 . . . [and] was designed to collect mud and debris which, in times of flood, might endanger lives and property in the city below." (*Id.* at pp. 692-693.)

One year before the plaintiffs purchased their home and two years after it was constructed, a house next door had been destroyed by flood waters. Approximately eight months before the incident in question a fire substantially denuded the hills above the debris basin. On the day of the incident, "a rainstorm quickly filled the Upper Debris Basin. A wall of water, mud and debris overflowed, traveling down the canyon to the curve in the street where the [plaintiffs'] home was located." (*Miller, supra,* 8 Cal.3d at p. 693.) The home was destroyed. One person died in the home and two were injured. Defendant Noble Manors was sued for negligence in the design and construction of the home. At trial, the plaintiffs did not call an expert relative to the negligence of the defendant. Following presentation of the plaintiffs' case, the trial court granted a nonsuit on the basis that "the evidence did not establish a prima facie showing of negligence." (*Id.* at p. 694.)

On appeal, the plaintiffs argued that the trial court should have allowed the jury to determine from their own common experience whether Noble Manors acted reasonably. (*Miller, supra,* 8 Cal.3d at p. 702.) In finding that expert testimony was necessary, the court indicated that "[t]he average layman has neither training nor experience in the construction industry and ordinarily cannot determine whether a particular building has

15

been built with the requisite skill *and in accordance with the standards prescribed by law or prevailing in the industry.*" (*Id.* at. pp. 702-703, fn. omitted, italics added.)

Applying these concepts to the present case, it is evident that evidence from an expert was necessary for purposes of the City prima facially establishing that there existed no triable issue of material fact as to whether the roadway and adjacent shoulder constituted a dangerous condition of public property. In most cases, the proper and safe design of public roadways requires special expertise and is done in accordance with criteria prevailing in the traffic engineering field.[7] It is not simply a matter of laying pavement on top of dirt and painting lines thereon. A prime example of this is the 1999 "Street Improvement Plan Palm Drive," which was not admitted into evidence on the present motion.

Here, there is no evidence that the design, construction, and maintenance of the roadway and adjacent dirt shoulder conformed to accepted highway design criteria or guidelines, or that the roadway was safe for motorists and pedestrians. For example, plaintiffs contend that in the area of the accident the roadway narrowed. Here, there is no evidence of the lane widths and the fact that they conformed with the prevailing and

---

[7] See California Highway Design Manual (July 1, 2008) ("The manual establishes uniform policies and procedures to carry out the highway design functions . . . .") and American Association of State Highway and Transportation Officials, A Policy on Geometric Design of Highways and Streets. The court takes judicial notice of the existence of these publications relative to their availability and use in the design and construction of roadways, signing of said roadways, and the design and construction of pedestrian and bicycle pathways. (See *City of Maywood v. Los Angeles Unified School Dist.* (2012) 208 Cal.App.4th 362, 417, fn 25 ["appropriate to take judicial notice of data 'not cited by the parties' . . . ."].)

16

accepted standards relative to the design of roadways. Further, and as exemplified by the 1999 design of the roadway, which was not admitted into evidence, there was no evidence that the slope of the northbound lanes was in accordance with industry standards. Lastly, there is no expert declaration relative to the fact that the roadway and adjacent shoulder were safe as it related to pedestrian traffic. Under the present facts, the submission of 11 innocuous photographs of a roadway simply does not meet the City's burden of affirmatively demonstrating that no triable issue of material fact exists. Just as a judge could look at photographs and surmise that a dangerous condition is not present, a similarly situated judge could look at photographs and surmise that the drop-off between the paved portion of the roadway and the dirt shoulder is unsafe, thereby contributing to a loss of control by the hit-and-run motorist. As in *Miller*, design of roadways is normally beyond the training and expertise of the average layperson. Under our facts, evidence that the design and construction of the roadway and adjacent shoulder was within prevailing standards was necessary.

Here, there must be some expert evidence to support the conclusion that no triable issue of material fact exists as to the dangerousness of the public property. (See *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 ["defendant must present evidence that would *preclude* a reasonable trier of fact from finding that it was more likely than not that the material fact was true"], italics added.) The City failed to produce such evidence.

17

In arguing that plaintiffs, by way of their opposition, did not demonstrate a triable issue of material fact, the City cites to the trial court's statement of decision wherein it explained: "Plaintiffs proffered no admissible evidence of a dangerous condition of public property. *No expert opinions were submitted* attacking the design of the roadway, signage, excessive speed limit, poor visibility, condition of the roadway surface, lack of sight distance, lack of maintenance, elevation variances, prior accidents in the area or any unusual condition. . . ." (Italics added, underlining omitted.) The observation that plaintiffs submitted no admissible evidence by way of expert opinion misses the point. On a motion for summary judgment, the initial burden of producing evidence rests with the moving defendant not the plaintiff. Thus, it was incumbent on the City to initially submit expert evidence so as to shift the burden to plaintiffs.

Instructive is *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509. There, the defendant law firm moved for summary judgment on the basis that it was not negligent. The defendant argued that the plaintiff's failure to produce expert evidence in opposition to the motion allowed for the trial court's entry of summary judgment. "[T]he burden-shifting provisions of [Code of Civil Procedure] section 437c, subdivision (o)(2) do not operate until the moving party first produces affirmative evidence negating the duty's existence, or evidence that [defendants] did not breach the duty of care. [Citation.] [Defendants] produced no expert testimony negating the duty of care or breach of duty elements of [plaintiff's] cause of action, and the motion for summary judgment should have been denied even though [plaintiff] did not produce

18

expert testimony." (*Id.* at pp. 1534-1535.) "[I]f the showing by the defendant does not support judgment in his favor, the burden does not shift to the plaintiff and the motion must be denied without regard to plaintiff's showing." (*Id.* at p. 1534.)

Here, the City failed to affirmatively produce sufficient evidence to shift the burden of production to plaintiffs; as such, it did not demonstrate its entitlement to summary judgment.

2.  The City Did Not Establish That Plaintiffs Cannot Prove an Element of Their Cause of Action

"As an alternative to the difficult task of negating an element, the defendant may present evidence to 'show[] that one or more elements of the cause of action . . . cannot be established' by the plaintiff. [Citations.] A defendant 'has shown that the plaintiff cannot establish at least one element of the cause of action by showing that the plaintiff does not possess, and cannot reasonably obtain, needed evidence: The defendant must show that the plaintiff *does not possess* needed evidence, because otherwise the plaintiff might be able to establish the elements of the cause of action; the defendant must also show that the plaintiff *cannot reasonably obtain* needed evidence, because the plaintiff must be allowed a reasonable opportunity to oppose the motion . . . .' [Citations.] *A defendant can satisfy its initial burden to show an absence of evidence through 'admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing' [citation], or through discovery responses that are factually devoid.* [Citations.] [¶] Only after the defendant's initial burden has been met does the burden

19

shift to the plaintiff to demonstrate, by reference to specific facts, not just allegations in the pleadings, there is a triable issue of material fact as to the cause of action." (*Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1301-1302, some italics in original, some italics added.)

The City suggests at pages 25 and 26 of its brief that plaintiffs have no evidence to support the contention that any defect in the roadway was a cause of the injury. As stated: "'An essential element of a cause of action for damages based on a dangerous condition of public property is causation.' [Citations.] Proof of causation is not the City's burden: 'plaintiff must show that the dangerous condition in question was a substantial factor in causing his or her harm.' [Citation.]" Within the context of a summary judgment motion, the City's argument is misplaced.

Initially, the case relied upon by the City for the proposition that it is plaintiffs' burden to show that the dangerous condition was a substantial factor in causing the harm is a case in which the trial court sustained a demurrer without leave to amend. The fact pattern before that court was a situation in which the plaintiff's decedent committed suicide by jumping off the Golden Gate Bridge. The plaintiff contended that in the absence of a "suicide barrier" the bridge was a dangerous condition. After discussing well-settled law that the negligence or lack of due care exhibited by the plaintiff-user does not defeat a cause of action for dangerous condition, the court stated, as to the action before it: "We conclude reasonable minds will reach but one conclusion as to whether the lack of a suicide barrier is a dangerous condition. By definition, persons who use the

20

bridge to commit suicide *are not* using the bridge in a manner used by the general public exercising ordinary care." (*Milligan v. Golden Gate Bridge Highway & Transportation Dist*. (2004) 120 Cal.App.4th 1, 7.)  As to causation, the court concluded:  "Here, appellant does not allege that her daughter accidentally fell from the bridge while engaged in horseplay, while leaning over the railing to gain a better view, or while posing for a photograph.  Appellant admits that [the decedent] intentionally climbed over the existing three-and-one-half-foot safety railing and jumped.  Whatever defects may or may not be present in the railing's current design, they were not, as a matter of law, the cause of [the decedent's] tragic death." (*Id.* at p. 9.)  On its facts, the case has no applicability to the present matter.

Further, on a motion for summary judgment, it is the defendant's burden to demonstrate that the plaintiff cannot prove causation.  "[A] defendant cannot simply 'argue' that a plaintiff lacks sufficient evidence to establish causation; the defendant must make an affirmative 'showing' that the plaintiff *cannot* do so.  While we acknowledge[] that circumstantial evidence supporting a summary judgment motion 'can consist of "factually devoid" discovery responses from which an absence of evidence can be inferred,' we also note[] 'that the burden should not shift without stringent review of the direct, circumstantial and inferential evidence.'  [Citation.]" (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 103.)

None of the City's 11 undisputed statements of fact set forth the notion plaintiffs cannot prove the element of causation.  The City submitted no discovery responses to the

21

effect that plaintiffs do not possess facts relative to this element and none of the supporting declarations or exhibits go to the issue.

As such, we find that the City failed in its burden. The burden never shifted to plaintiffs. The motion should have been denied.

3. The City's Cases

In its opposition to the motion and on appeal, the City relies primarily on four cases for the proposition that in automobile versus pedestrian cases "as a matter of law that there [is] no substantial risk of [an] accident so long as the driver and pedestrian exercise[] due care." As such, "the claim of a dangerous condition can be resolved as a matter of law 'if reasonable minds can come to but one conclusion.'"

The first of the four cases is *Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434. There, the plaintiff was struck by a car as she was walking across Chase Avenue near its intersection with Estes Street. (*Id.* at p. 436.) In the plaintiff's second amended complaint, she alleged that the intersection was not safe for pedestrians because the city "'failed to install traffic [regulatory] devices, traffic safety devices, traffic control devices, signs or traffic signs, or take any steps to manage, control, or reduce the automobile traffic flow or speed on Chase Avenue and/or . . . failed to take steps to prevent increased risk of harm and injury to the pedestrians . . . .'" (*Id.* at pp. 436, 438.)

In its demurrer, the defendant argued that it was immune from liability under sections 830.4 and 830.8 for its failure to install traffic (regulatory) devices, traffic safety devices, traffic control devices, signs or traffic signs. In agreeing with this argument, the

22

appellate court, in affirming the trial court's granting of the demurrer without leave to amend, stated: "[T]he Legislature has expressly provided that '[a] condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code.' (§ 830.4.) Thus, the statutory scheme precludes a plaintiff from imposing liability on a public entity for creating a dangerous condition merely because it did not install the described traffic control devices. [Citations.] [¶] . . . Accordingly, if the facts pleaded by the plaintiff as a matter of law cannot support the finding of the existence of a dangerous condition within the meaning of the statutory scheme, a court may properly sustain a demurrer to the complaint." (*Brenner v. City of El Cajon, supra,* 113 Cal.App.4th at pp. 439-440.) The case has little to no import on the present matter. Certainly, the case did involve an automobile versus pedestrian accident and the court did hold that as a matter of law the plaintiff had not set forth a viable cause of action. The reason for the decision however was that based on the allegations of the plaintiff's complaint, the governmental entity was immune from liability under section 830.4.[8] This is not the situation that is before us. The allegations in the present complaint do not plead directly into a statutory immunity.

---

[8] "A condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code." (§ 830.4.)

23

In *Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340 (*Cerna*), an unlicensed motorist struck six pedestrians as they walked in a marked crosswalk at an uncontrolled intersection. The roadway consisted of four lanes, two lanes in each direction, with a center divider. "Pedestrian crossing" was marked on the roadway. There was no evidence that the car slowed or swerved. The trial court granted the city's summary judgment motion.

After acknowledging that a public entity may be liable for a dangerous condition of public property where the immediate cause of the plaintiff's injury is a third party's negligent or illegal act, the court went on to analyze whether there were any physical characteristics of the property at issue that exposed the plaintiff to an increased risk of injury from the third party's negligent conduct. (*Cerna, supra,* 161 Cal.App.4th at p. 1348.)

As described by the court: "Plaintiffs identified seven features that allegedly made the City intersection dangerous: (1) the crosswalk was painted white, not yellow; (2) there was no sign painted in the approaching roadway with the words 'SLOW— SCHOOL XING'; (3) there was no traffic signal; (4) there were no crossing guards; (5) signs warning of the presence of student pedestrians were either missing or in an incorrect position; (6) the crosswalk was not painted with diagonal or longitudinal lines; and (7) there were no blinking lights in the pavement along the parallel painted lines of the crosswalk." (*Cerna, supra,* 161 Cal.App.4th at p. 1348.)

In dispensing with all of the plaintiffs' contentions, which were dependent on the crosswalk being contiguous to a school (Veh. Code, § 21368), the court stated: "[P]laintiffs' reliance on Vehicle Code section 21368—whether to create a mandatory duty or to demonstrate a dangerous condition—is misplaced because the statute is inapplicable. The intersection was not contiguous to school grounds and thus Vehicle Code [section] 21368 did not require demarcation in yellow paint and additional signage warning of a school crossing. The location of the crosswalk relative to the School grounds is not in dispute, and thus the applicability of Vehicle Code section 21368 is a question of law." (*Cerna, supra,* 161 Cal.App.4th at p. 1350.)

Continuing, the court stated: "Plaintiffs' reliance on other features of the intersection to prove that it was in a dangerous condition is similarly misplaced. The lack of a traffic signal at the intersection does not constitute proof of a dangerous condition. 'A condition is not . . . dangerous . . . merely because of the failure to provide regulatory traffic control signals . . . .' (Gov. Code, § 830.4; see *Brenner v. City of El Cajon, supra,* 113 Cal.App.4th at p. 439.) Nor does the lack of crossing guards prove a dangerous condition. The presence or absence of crossing guards is not a physical characteristic of the intersection and thus not actionable as a dangerous condition. A lack of human supervision and protection is not a deficiency in the physical characteristics of public property." (*Cerna, supra,* 161 Cal.App.4th at pp. 1351-1352.)

As with *Brenner*, the court in *Cerna* determined that as a matter of law, the plaintiffs' factual allegations were deficient. The court found that the crosswalk was not

25

contiguous to a school, thus the added protections provided for in the Vehicle Code were legally inapplicable; the court further found that the plaintiffs' additional allegations moved directly into the area subsumed by Government Code section 830.4 (entity is immune for its failure to provide regulatory traffic control signals). The only similarity *Cerna* has with the present matter is that it involves an automobile versus pedestrian accident; its holding is otherwise inapplicable.

*Salas v. Department of Transportation, supra,* 198 Cal.App.4th 1058 involved a nighttime accident in which a pedestrian, while walking across State Route 12, was struck and killed by a vehicle. At the time of the accident, the plaintiff's decedent had deviated from the crosswalk to examine a bag in the highway. In support of its motion for summary judgment, the defendant submitted the declaration of Caltrans expert Ron Nelson. Nelson declared that the roadway was straight and that there were no sight obstructions for either the motorist or the pedestrian. He further described the warning signs adjacent to the roadway which notified motorists of the upcoming crosswalk. (*Id.* at pp. 1062-1063.) He declared that the signage met current California design standards and "that the accident location was not a dangerous condition of public property." (*Id.* at pp. 1064, 1066.)

As for the plaintiff's evidence, the trial court sustained the defendant's objections to all of the police reports of prior accidents in that the prior accidents were not substantially similar to the one at bar. The court further sustained objections to the entirety of the plaintiff's expert's declaration "except . . . to the innocuous statement that

26

crosswalks warn drivers of potential pedestrians." (*Salas v. Department of Transportation, supra,* 198 Cal.App.4th at pp. 1072-1073, fn. omitted.)

The case is clearly inapposite. There, summary judgment was entered based on expert testimony that the roadway complied with accepted design criteria and was not in a dangerous condition at the time of the accident. That is not the case here. We have a summary judgment granted on the basis of a judge viewing 11 photographs and coming to the conclusion, without the aid of expert evidence, that the roadway and adjacent shoulder were not in a dangerous condition.

In *Sun v. City of Oakland* (2008) 166 Cal.App.4th 1177, the plaintiffs' decedent was struck by a vehicle while walking in an unmarked crosswalk on a four-lane roadway during the daytime. Previously, there had been a marked crosswalk in the area. A car in the No. 1 lane stopped to allow the decedent to cross in front. A second car traveling in the No. 1 lane changed to the No. 2 lane and struck the plaintiffs' decedent as she emerged from in front of the stopped vehicle. The trial court granted the defendant's motion for summary judgment.

On appeal, the plaintiffs argued that the condition was dangerous because of the unmarked crosswalk. (*Sun v. City of Oakland, supra,* 166 Cal.App.4th at p. 1184.) In response, the city, in reliance on the Vehicle Code, submitted: "'[T]he fact that the crosswalk was not marked . . . is irrelevant, and certainly does not create a dangerous condition. Under California law, a crosswalk is either marked or unmarked, and the

27

obligations of drivers and pedestrians to exercise caution and to yield the right of way are largely the same regardless of the markings or lack thereof.'" (*Id.* at pp. 1184-1185.)

The appellate court agreed. As stated: "There must be a defect in the physical condition of the property and that defect must have some causal relationship to the third party conduct that injures the plaintiff. [Citation.] '[P]ublic liability lies under [Government Code] section 835 only when a feature of the public property has "increased or intensified" the danger to users from third party conduct.' [Citation.]" (*Sun v. City of Oakland, supra,* 166 Cal.App.4th at p. 1187.) As such, the appellate court affirmed the trial court's granting of summary judgment.

Much of what was said in *Sun* could be said here. There is a total lack of evidence in our record as to whether the public property increased or intensified the danger to pedestrians from third party drivers. The burden, however, on summary judgment rested with the City to demonstrate that no triable issue of material fact exists as it relates to this issue. Without the aid of expert testimony, 11 photographs of the roadway simply do not meet the City's initial burden.

Further, at page 23 of its respondent's brief, the City submits that "the Vehicle Code long has contemplated that pedestrians will walk along roadways without a sidewalk. [Plaintiffs] submitted no law of any kind – administrative, judicial or otherwise – to suggest the installation of a sidewalk is legally mandated, and that its absence alone renders a public entity liable for a dangerous condition under the Government Code." The argument misses the point; simply because no law mandates a

28

pedestrian walkway or some other installation segregating vehicle and pedestrian traffic, does not mean that the area of roadway is not in a dangerous condition, within the meaning of the Government Code.[9]

### III.  DISPOSITION

The judgment is reversed.  Each party shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
            J.

We concur:

McKINSTER
            Acting P. J.

CODRINGTON
            J.

---

[9] See, as just a few examples, *Baldwin v. State of California* (1972) 6 Cal.3d 424, (absence of left turn lane at a heavily traversed intersection), *Elias v. San Bernardino County Flood Control Dist.* (1977) 68 Cal.App.3d 70 [Fourth Dist., Div. Two] (improperly maintained roadway), *Warden v. City of Los Angeles* (1975) 13 Cal.3d 297 (a submerged pipe near the surface of the Santa Monica Bay).  None of the dangerous conditions discussed in these cases were violative of state mandates.