Filed 4/7/23  Renfro-Vincent v. California Highway Patrol CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JACQUELINE RENFRO-VINCENT, Plaintiff and Appellant, v. CALIFORNIA HIGHWAY PATROL, Defendant and Respondent. | A163902 (Contra Costa County Super. Ct. No. MSC2100284) |

Decedent Steven Armstrong was struck and killed by a motor vehicle as he walked along the center divide of Highway 4 in Antioch.  His mother, plaintiff Jacqueline Renfro-Vincent, sued defendant California Highway Patrol (CHP) under Government Code[1] section 835, alleging that decedent's death was the foreseeable result of CHP's failure to abate a dangerous condition of public property.  Plaintiff now appeals after the trial court sustained CHP's demurrer to the operative complaint without leave to amend.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

According to the operative first amended complaint, decedent called 911 shortly after midnight and reported that someone was being raped and attacked with an axe.  Plaintiff alleges on information and belief that the call

---

[1]     Further unspecified section references are to the Government Code.

1

was immediately investigated, and that CHP determined decedent was possibly delusional.

Several hours later, CHP Officer R. Negi confronted decedent as he walked along the center divide of westbound Highway 4 in Antioch. Negi advised decedent to stay off the highway and then left the scene. Approximately three hours later, CHP was advised that decedent was lying on the right shoulder of westbound Highway 4. Negi encountered decedent again, gave him water to drink, and told him to leave the highway.

A few hours later, decedent was struck and killed by a vehicle while walking along Highway 4.

The first amended complaint asserts one cause of action against CHP under section 835.[2] Plaintiff alleges that CHP violated section 835 by "failing to take steps to assure that [decedent] did not again [wander] onto the highway, where it was foreseeable that he would be struck by a vehicle, and while he was also in violation of [Vehicle Code section 21960, subdivision (a)]."[3] Plaintiff further alleges that there was "ample indicia" decedent suffered from "severe mental impairment from his initial contact via 911 with [CHP] onward," and that CHP and its officers "failed to acknowledge that [decedent] was a danger to himself and drivers on the roadway" and should have placed decedent in custody pursuant to Welfare and Institutions Code section 5150, subdivision (a).

---

[2] The first amended complaint also asserts a cause of action for motor vehicle negligence against the driver of the vehicle that struck decedent and the vehicle's registered owner. The sufficiency of this cause of action is not at issue in this appeal.

[3] Vehicle Code section 21960, subdivision (a), provides in relevant part that the Department of Transportation and local authorities "may prohibit or restrict the use of the freeways, expressways, or any portion thereof by pedestrians, bicycles or other nonmotorized traffic."

2

The trial court sustained CHP's demurrer to the first amended complaint without leave to amend, concluding: (1) plaintiff failed to identify what condition of public property was dangerous; (2) plaintiff's allegation that decedent was a danger to himself and others failed to state a cause of action for dangerous condition of public property; (3) plaintiff failed to allege that CHP owned or controlled the highway; (4) a fence does not constitute a dangerous condition simply because someone is injured while attempting to scale it, and plaintiff failed to allege that the fence along Highway 4 was dangerous in any respect;[4] (5) to the extent plaintiff based CHP's liability on its officers' failure to take more drastic steps to prevent decedent from accessing the freeway again, this theory failed to state a claim under section 815.6 because Vehicle Code section 21960 and Welfare and Institutions Code section 5150 did not impose a mandatory duty on the officers to arrest or confine decedent; and (6) CHP is immune for its officers' failure to arrest decedent, enforce laws, or make an adequate mental examination of decedent.

Plaintiff now appeals from the ensuing judgment in favor of CHP.

## DISCUSSION

In determining whether a plaintiff states a sufficient claim for relief, we accept as true all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law, and we also consider matters which

---

[4]     The original complaint contained specific allegations that decedent accessed the highway through a fence, but these allegations were omitted in the first amended complaint. In support of its demurrer, CHP requested judicial notice of facts pled in the prior complaint, and notwithstanding the lack of a formal ruling, the court's reference to the fence allegations implies the judicial notice request was granted. In any event, plaintiff does not contend the trial court erred in its consideration of the fence allegations in the original complaint.

may be judicially noticed.  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 (*Zelig*).)  We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  (*Ibid*.)

A public entity is not liable for any injuries except as provided by statute.  (*Hayes v. State* (1974) 11 Cal.3d 469, 471, citing § 815, subd. (a).)  "The sole statutory basis for imposing liability on public entities as property owners is . . . section 835.  [Citations.]  Under that statute, a public entity is 'liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:  [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.' "  (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1347 (*Cerna*).)

As used in section 835, a " '[d]angerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."  (§ 830, subd. (a).)  " 'Protect against' includes repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition."  (*Id*., subd. (b).)  " 'Property of a public entity' and 'public property' mean real or personal property owned or controlled by the public entity, but do not include easements,

encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity." (*Id.*, subd. (c).)

"A plaintiff's allegations . . . must establish a physical deficiency in the property itself. [Citations.] A dangerous condition exists when public property 'is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself,' or possesses physical characteristics in its design, location, features or relationship to its surroundings that endanger users. [Citation.] [¶] A public entity may be liable for a dangerous condition of public property even where the immediate cause of a plaintiff's injury is a third party's negligent or illegal act (like [a motorist's] grossly negligent driving) if some physical characteristic of the property exposes its users to increased danger from third party negligence or criminality. [Citation.] But it is insufficient to show only harmful third party conduct, like the conduct of a motorist. ' "[T]hird party conduct by itself, unrelated to the condition of the property, does not constitute a 'dangerous condition' for which a public entity may be held liable." ' [Citation.] There must be a defect in the physical condition of the property and that defect must have some causal relationship to the third party conduct that injures the plaintiff. [Citation] '[P]ublic liability lies under . . . section 835 only when a feature of the public property has "increased or intensified" the danger to users from third party conduct.' " (*Cerna, supra,* 161 Cal.App.4th at pp. 1347–1348.)

The California Supreme Court's decision in *Zelig, supra,* 27 Cal.4th 1112, illustrates the application of these principles. There, the plaintiffs alleged the defendant county failed to police a courthouse to prevent the decedent's shooting. In concluding the county could not be held liable for a

dangerous condition of property under section 835, *Zelig* found it significant that the plaintiffs were unable to point to the manner in which the physical condition of the property should have been altered to prevent the shooting. (*Id*. at p. 1140.) As part of its analysis, *Zelig* distinguished the Supreme Court's earlier decision in *Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, which had concluded that a public entity was properly held liable under section 835 for failing to erect a median barrier to protect freeway drivers from serious injuries inherent in cross-median accidents. (*Zelig*, at p. 1139.) As *Zelig* explained, "the state's duty in the *Ducey* case was to alter the *physical condition of the property* to provide a safeguard against the danger presented by third parties. The court did not hold that a dangerous condition of property could exist without reference to any physical quality of the property, but only that the state may be required to alter its property to provide a physical barrier against danger presented by third parties." (*Zelig*, at p. 1139.)

With these authorities in mind, we turn to the allegations of the first amended complaint. Nowhere in the pleading does plaintiff allege that the area of Highway 4 where decedent was struck and killed was owned or controlled by CHP (§ 830, subd. (c)),[5] or that the area suffered from a deficient physical characteristic that increased the risk of harm beyond its inherent dangers as a highway (*Cerna, supra,* 161 Cal.App.4th at p. 1348). Plaintiff also does not allege that any defect in the condition of the highway had a causal relationship to the conduct of the motorist who struck decedent that increased or intensified the risk of such harm. (*Ibid*.) And nothing in

---

[5] CHP argues, and plaintiff does not dispute, that the Department of Transportation has full possession and control of state highways. (Sts. & Hy. Code, § 90; § 14520.3; *Jamison v. Department of Transportation* (2016) 4 Cal.App.5th 356, 362–363.)

6

the first amended complaint or plaintiff's briefing suggests how the area of the highway in question could have been altered to prevent the decedent's death. (See *Zelig*, *supra*, 27 Cal.4th at p. 1140.) Consequently, plaintiff fails to allege a dangerous condition of public property for purposes of section 835.

Plaintiff attempts to resist this conclusion by arguing that decedent's "very presence on the highway" was "a physical characteristic of the highway which CHP failed to abate." We are not persuaded. Plaintiff cites no authority extending the definition of a dangerous condition of public property to the mere "presence" of the injured person thereon, and courts have long rejected the proposition that a lack of human supervision and protection is a deficiency in the physical characteristics of public property for purposes of section 835. (*Cerna*, *supra*, 161 Cal.App.4th at p. 1352, citing *Zelig*, *supra*, 27 Cal.4th at pp. 1135–1141 and *Bartell v. Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492, 497–498.)

Plaintiff nevertheless maintains that under section 830, subdivision (b), CHP had a duty to provide safeguards to ensure that decedent did not wander onto the highway. But plaintiff's analysis falls short of satisfying section 830, subdivision (b), which defines the duty to " 'protect against' . . . *a dangerous condition.*" (Italics added.) Despite plaintiff's insistence that CHP is liable because "the death of [decedent] and injuries to the vehicle occupants were far too foreseeable to warrant inaction," the fact remains that plaintiff fails to trace the foreseeability of harm to any dangerous condition of public property owned and controlled by CHP.

Instead, the main thrust of plaintiff's complaint appears to be that given decedent's apparent mental impairment, the CHP officers had a duty to prevent him from returning to the highway, either by arresting him for violating Vehicle Code section 21960, subdivision (a), or by placing him on an

7

involuntary mental health hold under Welfare and Institutions Code section 5150, subdivision (a). But those statutes, by their terms, do not impose a mandatory duty on peace officers to act, and plaintiff provides no cogent argument or authority supporting the conclusion that the CHP officers' failure to take the identified steps exposed CHP to liability.

Similarly, to the extent plaintiff's argument rests upon a theory of a mandatory statutory duty under section 815.6, the attempt fails.[6] As CHP points out, neither the first amended complaint nor plaintiff's briefing on appeal cites to section 815.6; thus, plaintiff has forfeited any claim of liability under that statute. (*Aptos Council v. County of Santa Clara* (2017) 10 Cal.App.5th 266, 296, fn. 7.) In any case, plaintiff has identified no applicable statute creating a mandatory peace officer duty for purposes of imposing public entity liability under section 815.6.

Plaintiff may also be understood as contending that CHP owed decedent a general duty of care to prevent him from returning to the highway. But plaintiff offers no analysis or authority supporting that contention. Nor does plaintiff address the authorities cited in CHP's brief, which undermine the existence of such a duty. (E.g., *Zelig*, *supra*, 27 Cal.4th at pp. 1128–1130 [absent special relationship or creation of peril, one has no duty to come to aid of another], citing *Williams v. State of California* (1983) 34 Cal.3d 18, 23, 25 [no duty of care for injuries caused by police failure to respond to requests for assistance or properly investigate where police had

---

[6] Section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

8

not induced reliance on any promise that they would provide protection], *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 717 [law enforcement officers generally have no legal duty to come to aid of person except where officer's affirmative act places person in peril or increases risk of harm], *Zepeda v. City of Los Angeles* (1990) 223 Cal.App.3d 232, 236 [paramedics had no general duty to render aid to gunshot victim where they did not create peril, made no promise or statement that induced reliance, nor increased risk to victim that otherwise would have existed], and *Baker v. City of Los Angeles* (1986) 188 Cal.App.3d 902, 907–908 [circumstance that officer offered special protection on one occasion does not, by itself, give rise to continuing special relationship and duty at later date].)

Plaintiff belatedly argues for the first time in her reply brief that CHP is liable under section 815.2, subdivision (a), which provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Plaintiff has doubly forfeited review of this issue by her failure to raise it before the trial court and in her opening brief on appeal. (*Moore v. Centrelake Medical Group, Inc.* (2022) 83 Cal.App.5th 515, 541, fn. 13.) In any event, this vicarious liability statute is premised on the existence of a valid cause of action against the public employee. Here, plaintiff offers no authority supporting the premise of her claim, i.e., that the officers had a mandatory statutory duty or a general duty of care to arrest decedent or place him in a medical facility.

In sum, we conclude the trial court correctly concluded that plaintiff failed to state sufficient facts to constitute a cause of action against CHP for

9

dangerous condition of public property under section 835.[7]  When a demurrer is sustained without leave to amend, we must decide " 'whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.' " (*Zelig, supra*, 27 Cal.4th at p. 1126.)  Here, plaintiff proposed no new or different factual allegations that would have addressed the deficiencies identified above.  Accordingly, leave to amend was properly denied.[8]

## DISPOSITION

The judgment is affirmed.  CHP is entitled to its costs on appeal.

---

[7]  In light of our conclusion, we need not reach CHP's additional contention that it is statutorily immune from liability in this case.

[8]  The first amended complaint includes additional allegations that Officer Negi had a conflict of interest in acting as investigating officer and preparing CHP's incident report, and that he failed to provide information on his purported attempts to contact witnesses.  But plaintiff provides no argument or authority that these allegations, either alone or in view of the first amended complaint as a whole, support a viable cause of action against CHP.

FUJISAKI, J.

WE CONCUR:

TUCHER, P.J.

PETROU, J.

*Renfro-Vincent  v. CHP* (A163902)

11